# UNITED STATES BANKRUPTCY COURT

IN RE:   SonicBlue Inc., Diamond Multimedia Systems Inc., Replytv Inc., Sensory Science Corp.
        In a Chapter__11

through 03-51778 MM) (Jointly Administered)

**FILED**

Case No.:_03-51775 MM (Case Nos. 03-51775

2007 NOV 29 A 4: 52

Adv. Case No.:_

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

## TRANSMITTAL OF WITHDRAWAL OF REFERENCE
## TO THE DISTRICT COURT

1. __x____**Motion or order  to withdraw  reference**.

2. _____**Certificate to the District Court** non-core proceeding pursuant to B.L.R. 9015-2(b) demand for jury trial.

3. _____**Certificate to the District Court** pursuant to B.L.R. 9015-2(d) personal injury tort and wrongful death claims

DATE FILED: ___[Date Filed]

FILED BY (MOVANT): __Stroock and Stroock and Lavan LLP

ATTORNEY:   ___Lewis Kruger
_____180 Maiden Lane, New York, NY 10038

<u>PLEADINGS TRANSMITTED TO DISTRICT COURT</u>

| | |
|---|---|
| ____x_____ | Motion or Order to Withdraw Reference |
| _____ | Memorandum in Support of Motion to Withdraw Reference |
| _____ | Response to Motion to Withdraw Reference |
| _____ | Certificate to the District Court |
| _____ | Certified Copy of Bankruptcy Docket Sheet |
| ____x_____ | Other Pertinent Record:_Request for Judicial Notice_____ |

_____
_____

COUNTY OF DEBTOR(S) RESIDENCE: _Santa Clara

DATE: __11/28/07                    TRANSMITTED: ___11/29/07

                  By: _Janet Dustin, Deputy Clerk

                  Phone No.: _408-535-5099

**C07  06025 JW**

DISTRICT COURT CASE NUMBER:_____

DATE:_____BY:_____

NOV 30 2007

PLEASE RETURN SECOND COPY UPON RECEIPT

cc:      Attorney for Movant
         Attorney for Respondent

1 | STROOCK & STROOCK & LAVAN LLP
Lewis Kruger (admitted *pro hac vice*)
2 | Kenneth Pasquale (admitted *pro hac vice*)
180 Maiden Lane
3 | New York, New York 10038
Telephone: (212) 806-5400
4 | Facsimile: (212) 806-6006

*Lucas Messenger*
*310-*
*566 - 6993*

5 | STROOCK & STROOCK & LAVAN LLP
Alan Z. Yudkowsky (State Bar No. 194994)
6 | 2029 Century Park East, Suite 1800
Los Angeles, California 90067
7 | Telephone: (310) 556-5800
Facsimile: (310) 556-5959

8 |

9 | Counsel for Portside Growth & Opportunity Fund,
Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd.

10 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Van C. Durrer II (State Bar No. 226693)
11 | Glenn Walter (State Bar No. 220015)
300 South Grand Avenue, Suite 3400
12 | Los Angeles, California 90071
Telephone: (213) 687-5000
13 | Facsimile: (213) 687-5600

14 | Counsel for Citadel Equity Fund Ltd.

15 | **UNITED STATES BANKRUPTCY COURT**

16 | **NORTHERN DISTRICT OF CALIFORNIA**

17 | **SAN JOSE DIVISION**

18 | - - - - - - - - - - - - - - - - - - - - - - - - - x

19 |          :    Bankruptcy Case No. 03-51775

20 | In re       :    Chapter 11

21 | SONICBLUE INCORPORATED, a Delaware : 
corporation; DIAMOND MULTIMEDIA :   **NOTICE OF MOTION AND MO-**
22 | SYSTEMS, INC., a Delaware corporation; :   **TION TO WITHDRAW REFER-**
REPLAYTV, INC. a Delaware corporation; :   **ENCE OF CHAPTER 11 CASES**
and SENSORY SCIENCE CORPORATION, a :
23 | Delaware corporation,      :

24 |      Debtors and Debtors in Possession. :

25 |         :

26 | - - - - - - - - - - - - - - - - - - - - - - - - - x

27 |

28 |

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on a date to be determined before the United States District

3    Court for the Northern District of California ("District Court"), located at the United States Court-

4    house, 280 South First Street, San Jose, California, 95113, Portside Portside Growth & Opportunity

5    Fund, Smithfield Fiduciary LLC and Citadel Equity Fund Ltd. (collectively, the "Senior Notehold-

6    ers"), will and hereby do move, pursuant to section 157(d) of title 28 of the United States Code and

7    Rule 5011(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), for an order

8    withdrawing the reference of the chapter 11 cases of the above-captioned debtors (the "Chapter 11

9    Cases"). Because this motion to withdraw the reference is related to the appeal ("Appeal") pending

10   in the District Court before the Honorable Ronald M. Whyte, Case No. 07-02553, and is being filed

11   in conjunction with the Senior Noteholders' opposition to the Chapter 11 Trustee's Motion to Dis-

12   miss Appeal, contemporaneously herewith the Senior Noteholders will file an ex parte administra-

13   tive motion to consider whether the Appeal and this motion are related and should be assigned to

14   Judge Whyte.   Under Federal Rule of Bankruptcy Procedure 5011 and Bankruptcy Local Rule

15   5011-2, this motion is being filed with the clerk of the Bankruptcy Court for transfer to the District

16   Court.

17   This motion is made on the grounds that cause exists for the District Court to withdraw the

18   reference of the Chapter 11 Cases. Upon the filing of the notice of appeal by the Senior Notehold-

19   ers, the Bankruptcy Court was divested of jurisdiction over those aspects of the case on appeal.  As

20   such, the District Court has become the most appropriate forum for the resolution of the Chapter 11

21   Cases, and withdrawal of the reference is necessary to ensure the efficient administration of these

22   cases.

23   This motion is based on this notice of motion and motion, the below Memorandum of

24   Points and Authorities, the Request for Judicial Notice (a copy of which is attached hereto as Ex-

25   hibit 1), the record in these cases, and any further evidence or argument the court may consider.

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

The Senior Noteholders are entitled to the relief requested in this motion for the reasons set forth in the Memorandum of Points and Authorities in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for Limited Stay of Proceedings and/or to Withdraw the Reference of the Chapter 11 Cases ("Cross-Motions MOL") filed in the District Court (a copy of which is attached hereto as Exhibit 2). The Senior Noteholders hereby incorporate the Cross-Motions MOL herein by reference.

Dated:  November 20, 2007                    STROOCK & STROOCK & LAVAN LLP
                                             LEWIS KRUGER
                                             KENNETH PASQUALE
                                             ALAN Z. YUDKOWSKY


                                             By:   /s/ Lewis Kruger
                                                   _____
                                                   Lewis Kruger
                                                   Attorneys for Portside Growth & Opportunity
                                                   Fund, Smithfield Fiduciary LLC, and Citadel Eq-
                                                   uity Fund Ltd.

                                             SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                             VAN C. DURRER II
                                             GLENN WALTER


                                             By:   _____
                                                   Glenn Walter
                                                   Attorneys for Citadel Equity Fund Ltd.

1 | STROOCK & STROOCK & LAVAN LLP
Lewis Kruger (admitted *pro hac vice*)
2 | Kenneth Pasquale (admitted *pro hac vice*)
180 Maiden Lane
3 | New York, New York 10038
Telephone: (212) 806-5400
4 | Facsimile: (212) 806-6006

5 | STROOCK & STROOCK & LAVAN LLP
Alan Z. Yudkowsky (State Bar No. 194994)
6 | 2029 Century Park East, Suite 1800
Los Angeles, California 90067
7 | Telephone: (310) 556-5800
Facsimile: (310) 556-5959
8 |
Counsel for Portside Growth & Opportunity Fund,
9 | Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd.

10 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Van C. Durrer II (State Bar No. 226693)
11 | Glenn Walter (State Bar No. 220015)
300 South Grand Avenue, Suite 3400
12 | Los Angeles, California 90071
Telephone: (213) 687-5000
13 | Facsimile: (213) 687-5600

14 | Counsel for Citadel Equity Fund Ltd.

15 | UNITED STATES DISTRICT COURT

16 | NORTHERN DISTRICT OF CALIFORNIA

17 | SAN JOSE DIVISION

18 | - - - - - - - - - - - - - - - - - - - - - - - - - x
    :
19 |                                                    :
    :
20 | In re                                              :   Case No. C-07-02553 RMW
    :
21 | SONICBLUE INCORPORATED, a Delaware  :   **REQUEST FOR JUDICIAL NO-**
corporation; DIAMOND MULTIMEDIA  :   **TICE IN SUPPORT OF SENIOR**
SYSTEMS, INC., a Delaware corporation;  :   **NOTEHOLDERS' OPPOSITION**
22 | REPLAYTV, INC., a Delaware corporation;  :   **TO MOTION TO DISMISS AP-**
and SENSORY SCIENCE CORPORATION, a :   **PEAL AND CROSS-MOTIONS**
23 | Delaware corporation,                      :   **FOR LIMITED STAY OF PRO-**
    :   **CEEDINGS AND/OR TO WITH-**
24 | Debtors and Debtors in Possession. :   **DRAW REFERENCE OF CHAP-**
    :   **TER 11 CASES**
25 |                                                    :
    :
26 | - - - - - - - - - - - - - - - - - - - - - - - - - x

27 |

28 |

1    Appellants Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and Citadel

2  Equity Fund Ltd. (the "Senior Noteholders"), by and through their counsel, hereby request the

3  Court to take judicial notice of these certain items designated in the Senior Noteholders' Designa-

4  tion of Items to be Included in the Record on Appeal and Statement of Issues on Appeal (the

5  "ADR") (Docket No. 3), the and certain additional items pursuant to Federal Rule of Evidence 201:

6    1.    Order Granting Debtors' Motion for Approval of Settlement of VIA and Intel Liti-

7  gation, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California,

8  Case No. 03-51775 (Docket No. 1981).

9    2.    Motion by United States Trustee for Appointment of a Chapter 11 Trustee or, in the

10  Alternative, an Examiner, In re SonicBlue Inc., United States Bankruptcy Court for the Northern

11  District of California, Case No. 03-51775 (Docket No. 2153) (ADR, Ex. 28).

12    3.    Motion to Disqualify Pillsbury Winthrop Shaw Pittman LLP, to Vacate Employ-

13  ment Order, and for Disgorgement of Attorneys' Fees, In re SonicBlue Inc., United States Bank-

14  ruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2163) (ADR,

15  Ex. 29).

16    4.    Amended Motion of United States Trustee for Appointment of Chapter 11 Trustee,

17  In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case

18  No. 03-51775 (Docket No. 2168) (ADR, Ex. 30).

19    5.    Motion to Convert Case to Chapter 7, In re SonicBlue Inc., United States Bank-

20  ruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2171) (ADR,

21  Ex. 31).

22    6.    First Amended Motion to Convert Case to Chapter 7, In re SonicBlue Inc., United

23  States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No.

24  2173) (ADR, Ex. 32).

25    7.    Memorandum Decision and Order on Motion to Appoint a Chapter 11 Trustee, Mo-

26  tion to Convert Case, and Motion to Disqualify Pillsbury Winthrop Shaw Pittman LLP and for

27  Disgorgement of Attorneys' Fees, In re SonicBlue Inc., United States Bankruptcy Court for the

28  Northern District of California, Case No. 03-51775 (Docket No. 2220) (ADR, Ex. 49).

1        8.    Motion for Clarification, or in the Alternative, Leave to File a Motion for Reconsid-

2    eration, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of Califor-

3    nia, Case No. 03-51775 (Docket No. 2231) (ADR, Ex. 51).

4        9.    Application for Order Approving the Appointment of Chapter 11 Trustee, In re

5    SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

6    03-51775 (Docket No. 2239).

7        10.    Order Approving Appointment of Chapter 11 Trustee, In re SonicBlue Inc., United

8    States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No.

9    2242).

10        11.    Memorandum Decision and Order on Motion of Senior Noteholders for Clarifica-

11    tion, or in the Alternative, Reconsideration, In re SonicBlue Inc., United States Bankruptcy Court

12    for the Northern District of California, Case No. 03-51775 (Docket No. 2279) (ADR, Ex. 57).

13        12.    Notice of Appeal to District Court, In re SonicBlue Inc., United States Bankruptcy

14    Court for the Northern District of California, Case No. 03-51775 (Docket No. 2292) (ADR, Ex. 58).

15        13.    Notice of Transfer of Claim Other Than for Security, In re SonicBlue Inc., United

16    States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No.

17    2316).

18        14.    Motion for Order (1) Directing United States Trustee to Change the Membership of

19    Official Committee of Creditors Holding Unsecured Claims, or (2) Directing the Appointment of a

20    New Trade Creditor Committee, In re SonicBlue Inc., United States Bankruptcy Court for the

21    Northern District of California, Case No. 03-51775 (Docket No. 2341).

22        15.    Joint Chapter 11 Plan of Liquidation Proposed by Dennis J. Connolly, Chapter 11

23    Trustee, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of Califor-

24    nia, Case No. 03-51775 (Docket No. 2391).

25        16.    Disclosure Statement Describing Joint Chapter 11 Plan of Liquidation Proposed by

26    Dennis J. Connolly, Chapter 11 Trustee, In re SonicBlue Inc., United States Bankruptcy Court for

27    the Northern District of California, Case No. 03-51775 (Docket No. 2392).

28

1      17.    Objection of SonicBlue Claims LLC to Disclosure Statement Describing Joint

2  Chapter 11 plan of Liquidation Proposed by Dennis J. Connolly, Chapter 11 Trustee, In re

3  SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

4  03-51775 (Docket No. 2429).

5      18.    Emergency Motion for Protective Order in Respect of SonicBlue Claims' Notices of

6  Deposition of Henry Kevane, John J. Todd, Albert Boro, Suzzanne Uhland, and Bruce Bennett, on

7  September 6, 10, 11, 12 and 13, 2007, In re SonicBlue Inc., United States Bankruptcy Court for the

8  Northern District of California, Case No. 03-51775 (Docket No. 2436).

9      19.    Response to Motion for Order Shortening Time on Trustee's Motion for a Protective

10  Order, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California,

11  Case No. 03-51775 (Docket No. 2445).

12      20.    Opposition to Trustee's Motion for a Protective Order, In re SonicBlue Inc., United

13  States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No.

14  2458).

15      21.    Transcript of Proceedings, September 5, 2007, In re SonicBlue Inc., United States

16  Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2504).

17      22.    Transcript of Proceedings, September 20, 2007, In re SonicBlue Inc., United States

18  Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2505).

19      23.    Order Granting Motion for Order (1) Directing United States Trustee to Change the

20  Membership of Official Committee of Creditors Holding Unsecured Claims, or (2) Directing the

21  Appointment of a New Trade Creditor Committee, In re SonicBlue Inc., United States Bankruptcy

22  Court for the Northern District of California, Case No. 03-51775 (Docket No. 2510).

23      24.    Status Report of the Chapter 11 Trustee Pursuant to 11 U.S.C. §§ 105(d),

24  1106(A)(3), (A)(4), and (A)(5), In re SonicBlue Inc., United States Bankruptcy Court for the

25  Northern District of California, Case No. 03-51775 (Docket No. 2515).

26      25.    Notice of Dissolution of Official Committee of Creditors Holding Unsecured

27  Claims, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of Califor-

28  nia, Case No. 03-51775 (Docket No. 2520).

1    26.    Motion for Partial Relief from Order Granting Debtors' Motion for Approval of Set-

2    tlement of VIA and Intel Litigation, In re SonicBlue Inc., United States Bankruptcy Court for the

3    Northern District of California, Case No. 03-51775 (Docket No. 2545).

4    27.    Motion to Vacate or Modify in Part Order Approving VIA Settlement Based Upon

5    Fraud on the Court Due to Counsel's Failure to Disclose a Material Conflict of Interest, In re

6    SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

7    03-51775 (Docket No. 2548).

8    28.    Complaint for Equitable Subordination, to Determine Proper Classification, and for

9    Declaratory Relief Regarding Senior Indebtedness Status, SonicBlue Claims LLC v. Portside

10    Growth & Opportunity Fund (In re SonicBlue Inc.), United States Bankruptcy Court for the North-

11    ern District of California, Adv. P. No. 07-05082 (Docket No. 1).

12    29.    Defendants' Motion to Dismiss, SonicBlue Claims LLC v. Portside Growth & Op-

13    portunity Fund (In re SonicBlue Inc.), United States Bankruptcy Court for the Northern District of

14    California, Adv. P. No. 07-05082 (Docket No. 12).

15    30.    Opposition to Defendants' Motion to Dismiss, SonicBlue Claims LLC v. Portside

16    Growth & Opportunity Fund (In re SonicBlue Inc.), United States Bankruptcy Court for the North-

17    ern District of California, Adv. P. No. 07-05082 (Docket No. 40).

18    31.    Order Denying Motion to Dismiss Adversary Proceeding, SonicBlue Claims LLC v.

19    Portside Growth & Opportunity Fund (In re SonicBlue Inc.), United States Bankruptcy Court for

20    the Northern District of California, Adv. P. No. 07-05082 (Docket No. 49).

21    32.    Transcript of Proceedings, September 27, 2007, SonicBlue Claims, LLC v. Portside

22    Growth & Opportunity Fund (In re SonicBlue Inc.), United States Bankruptcy Court for the North-

23    ern District of California, Adv. P. No. 07-05082 (Docket No. 51).

24    33.    Notice of Appeal, In re SonicBlue Inc., United States District Court for the Northern

25    District of California, Case No. C-07-02553 RMW (Docket No. 1).

26    34.    Chapter 11 Trustee's Motion to Dismiss Appeal, In re SonicBlue Inc., United States

27    District Court for the Northern District of California, Case No. C-07-02553 RMW (Docket No. 14).

28

1     35.     Opposition of Pillsbury Winthrop Shaw Pittman LLP to U.S. Trustee's Motion to

2  Disqualify Pillsbury, Vacate Employment Order, and Require Disgorgement of Attorneys' Fees, In

3  re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

4  03-51775 (Docket No. 2182) (ADR, Ex. 37).

5     36.     Appointment of Committee of Unsecured Creditors, In re SonicBlue Inc., United

6  States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No.

7  26) (ADR, Ex. 1).

8     37.     First Amended Appointment of Committee of Unsecured Creditors, In re SonicBlue

9  Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775

10  (Docket No. 119) (ADR, Ex. 6).

11     38.     Second Amended Appointment of Committee of Unsecured Creditors, In re

12  SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

13  03-51775 (Docket No. 528) (ADR, Ex. 8).

14     39.     Declaration of Bruce Bennett in Support of Debtors' Emergency Motion for Order

15  (1) Establishing Notice, Sales and Bidding Procedures for Sale of Substantially All of the Debtors'

16  Product Lines Free and Clear of All Liens, Claims, and Encumbrances; (2) Authorizing The As-

17  sumption and Assignment, or Rejection of Certain Executory Contracts and Unexpired Leases in

18  Connection with Asset Sale, and (3) Setting Hearing on Sale of Assets on Shortened Notice, In re

19  SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

20  03-51775 (Docket No. 28) (ADR, Ex. 2).

21     40.     Notice of Appearances and Request for Notices and Services of Papers, In re

22  SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

23  03-51775 (Docket No. 43) (ADR, Ex. 3).

24     41.     Application of the Official Committee of Unsecured Creditors to Employ Levene,

25  Neale, Bender, Rankin, & Brill L.L.P. as Bankruptcy Counsel, In re SonicBlue Inc., United States

26  Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 63)

27  (ADR, Ex. 4).

28

1    42.    Declaration of Ron Bender in Support of Application of Official Committee of Un-

2    secured Creditors to Employ Levene, Neale, Bender, Rankin & Brill L.L.P. as Bankruptcy Counsel,

3    In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case

4    No. 03-51775 (Docket No. 64) (ADR, Ex. 5).

5    43.    Stipulation Providing Relief from the Automatic Stay to Senior Noteholders, Filed

6    7/14/03, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of Califor-

7    nia, Case No. 03-51775 (Docket No. 334) (ADR, Ex. 7).

8    44.    Stipulation Providing Relief from Automatic Stay to Senior Noteholders, Filed

9    10/16/03, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of Cali-

10    fornia, Case No. 03-51775 (Docket No. 545) (ADR, Ex. 10).

11    45.    Declaration of Ron Bender in Response of the Official Committee of Creditors

12    Holding Secured Claims to (1) the Motion by the Office of the United States Trustee Seeking the

13    Appointment of a Chapter 11 Trustee and (2) the Motion by SBC seeking to Convert These Chap-

14    ter 11 Cases to Chapter 7, In re SonicBlue Inc., United States Bankruptcy Court for the Northern

15    District of California, Case No. 03-51775 (Docket No. 2185) (ADR, Ex. 39).

16    46.    Response to Motion to Convert Chapter 11 Case to a Case Under Chapter 7, In re

17    SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

18    03-51775 (Docket No. 2181) (ADR, Ex. 36).

19    47.    Transcript of Hearing Held on March 19, 2007, In re SonicBlue Inc., United States

20    Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2226)

21    (ADR, Ex. 50).

22    48.    Objection of Debtor SonicBlue Inc. to Duplicate Proofs of Claim of Via Technolo-

23    gies, Inc. and S3 Graphics Co., Ltd. And Debtors' Second Amended Adversary Complaint for Af-

24    firmative Relief, SonicBlue Claims LLC v. Via Technologies, Inc. (In re SonicBlue Inc.), United

25    States Bankruptcy Court for the Northern District of California, Adv. P. No. 04-05556 (Docket No.

26    42).

27

28

1    49.    Ex Parte Application to File Debtors' Motion for Approval of Settlement of VIA
2    and Intel Litigation Under Seal, In re SonicBlue Inc., United States Bankruptcy Court for the
3    Northern District of California, Case No. 03-51775 (Docket No. 1950).

4    50.    Order Approving Ex Parte Application to File Debtors' Motion For Approval of
5    Settlement of VIA and Intel Litigation Under Seal, In re SonicBlue Inc., United States Bankruptcy
6    Court for the Northern District of California, Case No. 03-51775 (Docket No. 1951).

7    51.    Notice of Debtors' Motion for Approval of Settlement of VIA and Intel Litigation,
8    In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case
9    No. 03-51775 (Docket No. 1955).

10    52.    Notice of Filing of Redacted Copy of Memorandum of Points and Authorities in
11    Support of Debtors' Motion for Approval of Settlement of VIA and Intel Litigation, In re
12    SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.
13    03-51775 (Docket No. 2057).

14    53.    Transcript of Hearing Held on January 23, 2007 re Approval of Disclosure State-
15    ment, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California,
16    Case No. 03-51775 (Docket No. 2136) (ADR, Ex. 20).

17    54.    Disclosure Statement for Liquidating Plan of Reorganization Dated as of December
18    15, 2006, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of Cali-
19    fornia, Case No. 03-51775 (Docket No. 2047) (ADR, Ex. 11).

20    55.    Objection to Joint Disclosure Statement, In re SonicBlue Inc., United States Bank-
21    ruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2091) (ADR,
22    Ex. 13).

23    56.    Supplemental Objection to Joint Disclosure Statement Dated January 18, 2007, In re
24    SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.
25    03-51775 (Docket No. 2115) (ADR, Ex. 17).

26    57.    Objection to Proposed Disclosure Statement Dated January 18, 200, In re SonicBlue
27    Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775
28    (Docket No. 2116) (ADR, Ex. 18).

7

1    58.    Submission of Preliminary Status Report and Request for Continuance of Deadline

2 for Submission of Final Status Report and of Disclosure Statement, In re SonicBlue Inc., United

3 States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No.

4 2138) (ADR, Ex. 21).

5    59.    Transcript of Hearing Held on February 15, 2007 re a) Motion for Authority to Dis-

6 close Confidential Information to People Who are Not Parties to the VIA/Intel Confidentiality

7 Agreement by Official Committee of Creditors Holding Unsecured Claims; b) Response by VIA

8 Technologies, Inc., In re SonicBlue Inc., United States Bankruptcy Court for the Northern District

9 of California, Case No. 03-51775 (Docket No. 2176) (ADR, Ex. 34).

10    60.    Transcript of Hearing Held on May 4, 2007 re a) Motion for Clarification, or in the

11 Alternative, for Leave to File a Motion for Reconsideration by Portside Growth & Opportunity

12 Fund, Smithfield Fiduciary LLC, and Citadel Equity Fund, Ltd.; b) Amended Opposition by Sonic

13 Blue Claims, LLC, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District

14 of California, Case No. 03-51775 (Docket No. 2303) (ADR, Ex. 61).

15    61.    Reply to SonicBlue Claims LLC's Response to Preliminary Status Report, In re

16 SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

17 03-51775 (Docket No. 2150) (ADR, Ex. 27).

18    62.    First Amended Disclosure Statement Describing First Amended Liquidating Plan of

19 Reorganization, Dated as of January 18, 2007, In re SonicBlue Inc., United States Bankruptcy

20 Court for the Northern District of California, Case No. 03-51775 (Docket No. 2103) (ADR, Ex. 14).

21    63.    Supplemental Document in Support of Motion to Vacate, In re SonicBlue Inc.,

22 United States Bankruptcy Court for the Northern District of California, Case No. 03-51775

23 (Docket No. 2558).

24    64.    Stipulated Protective Order, In re SonicBlue Inc., United States Bankruptcy Court

25 for the Northern District of California, Case No. 03-51775 (Docket No. 529) (ADR, Ex. 9).

26    65.    Reply Brief in Support of Motion for Clarification, or in the Alternative, for Leave

27 to File a Motion for Reconsideration, In re SonicBlue Inc., United States Bankruptcy Court for the

28 Northern District of California, Case No. 03-51775 (Docket No. 2265) (ADR, Ex. 54).

8

1    66.    Appellants Designation of Items to be Included on the Record on Appeal and
2  Statement of Issues on Appeal, In re SonicBlue Inc., United States Bankruptcy Court for the
3  Northern District of California, Case No. 03-51775 (Docket No. 2308).

4    67.    Reply by Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and
5  Citadel Equity Fund Ltd. to SonicBlue Claims LLC's Reply to Opposition to the U.S. Trustee's
6  Motion to Disqualify Pillsbury, In re SonicBlue Inc., United States Bankruptcy Court for the
7  Northern District of California, Case No. 03-51775 (Docket No. 2202) (ADR, Ex. 46).

8    Under Federal Rule of Evidence 201, a court may take judicial notice of "facts that are not
9  subject to reasonable dispute in that they are either (1) generally known within territorial jurisdic-
10  tion of the trial court or (2) capable of accurate and ready determination by resort to sources whose
11  accuracy cannot reasonably be questioned." Biggs v. Capital Factors, Inc., 120 F.3d 268 (9th Cir.
12  1997).  This Court may take judicial notice of Exhibits 1-67 because they are capable of accurate
13  and ready determination since they are from the files of this Court as well as the United States
14  Bankruptcy Court for the Northern District of California.  See Duke Energy Trading & Mktg.,
15  L.L.C. v. Davis, 267 F.3d 1042, 1048 n.3 (9th Cir. 2001) (Ninth Circuit took judicial notice of fil-
16  ings made in related bankruptcy proceeding).  Furthermore, the exhibits "consist of court records,
17  the accuracy of which cannot reasonably be questioned." Esiomeme v. United Airlines, Inc., 369
18  B.R. 531, 1-2 (N.D. Cal. 2007) (granting defendant's request for judicial notice of debtor's volun-
19  tary bankruptcy petition and bankruptcy court's orders confirming debtor's plan of reorganization).

20
21
22
23
24
25
26
27
28

9

1    Accordingly, the Senior Noteholders respectfully request that this Court take judicial notice

2  of Exhibits 1-67.[1]

3  Dated: November 20, 2007          STROOCK & STROOCK & LAVAN LLP

4

5                                    By: /s/ Alan Z. Yudkowsky
                                          Lewis Kruger
6                                         Attorneys for Portside Growth & Opportunity Fund,
                                          Smithfield Fiduciary LLC, and
7                                         Citadel Equity Fund Ltd.

8

9                                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

10                                   By: /s/ Glenn Walter
                                          Glenn Walter
11                                        Attorneys for Citadel Equity Fund Ltd.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  ─────────────────

27    [1]    Any party that requires a copy of the exhibits to this Request for Judicial Notice
     may request such copies from counsel to the Senior Noteholders, and will be provided such copies
28  free of charge.

Exhibit 2

1  STROOCK & STROOCK & LAVAN LLP
   Lewis Kruger (admitted *pro hac vice*)
2  Kenneth Pasquale (admitted *pro hac vice*)
   180 Maiden Lane
3  New York, NY 10038-4982
   Telephone: (212) 806-5400
4  Facsimile: (212) 806-6006

5  STROOCK & STROOCK & LAVAN LLP
   Alan Z. Yudkowsky (State Bar No. 194994)
6  2029 Century Park East, Suite 1800
   Los Angeles, California 90067
7  Telephone: (310) 556-5800
   Facsimile: (310) 556-5959
8
   Counsel for Portside Growth & Opportunity Fund,
9  Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd.

10 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Van C. Durrer II (State Bar No. 226693)
11 Glenn Walter (State Bar No. 220015)
   300 South Grand Avenue, Suite 3400
12 Los Angeles, California 90071
   Telephone: (213) 687-5000
13 Facsimile: (213) 687-5600

14 Counsel for Citadel Equity Fund Ltd.

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                          SAN JOSE DIVISION

18

19 In re                                  ) Case No. C-07-02553 RMW
                                          )
20 SONICBLUE INCORPORATED, a Delaware     )
   corporation; DIAMOND MULTIMEDIA SYS-   ) MEMORANDUM OF POINTS AND AU-
21 TEMS, INC., a Delaware corporation; RE-) THORITIES IN SUPPORT OF SENIOR
   PLAYTV, INC., a Delaware corporation; and) NOTEHOLDERS' OPPOSITION TO MO-
22 SENSORY SCIENCE CORPORATION, a         ) TION TO DISMISS APPEAL AND
   Delaware corporation,                  ) CROSS-MOTIONS FOR LIMITED STAY
                                          ) OF PROCEEDINGS AND/OR TO WITH-
23                                        ) DRAW REFERENCE OF CHAPTER 11
          Debtors and Debtors in Possession. ) CASES
24                                        )
                                          )
25                                        )

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ....................................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................................... 4

    A.    The Senior Noteholders And The Debtor................................................. 4

    B.    The Bankruptcy Cases ............................................................................. 4

          1.    The Initial Creditors Committee ............................................... 5

          2.    The VIA Litigation And The Intel Motion ............................... 6

          3.    The VIA Settlement Negotiations ............................................ 6

          4.    The Original Issue Discount And The 2002 Opinion Letter .......................... 10

          5.    The Initial Disclosure Statement ............................................ 11

          6.    The Orders .............................................................................. 12

               a)    The First Opinion ....................................................... 13

               b)    The Clarification Denial Order.................................... 13

               c)    The Notice Of Appeal ................................................ 14

          7.    The Adversary Proceeding ..................................................... 15

          8.    The Chapter 11 Trustee's Proposed Plan And Disclosure Statement ........... 16

          9.    The Motion To Reconstitute The Initial Creditors Committee .................... 16

          10.   The Motions To Partially Vacate The Settlement Order ................................ 17

    C.    The Motion To Dismiss The Appeal ...................................................... 18

III.  RELIEF REQUESTED .............................................................................................. 18

IV.   DISCUSSION............................................................................................................. 19

    A.    The Court Possesses Jurisdiction Over The Appeal............................... 19

          1.    "Route One":  Reformation Of A Favorable Judgment ................................ 20

          2.    "Route Three":  Collateral Estoppel....................................... 22

    B.    The Court Should Stay The Motions To Vacate Or, Alternatively, Withdraw The Reference Of The Bankruptcy Cases From The Bankruptcy Court To The District Court................................................................................................ 24

- i -

1            1.     The Senior Noteholders Meet the Standard For Granting A Stay ................28

2            2.     Granting a Stay Will Not Prejudice SB Claims And Public Policy
                Favors A Stay .........................................................................................30

3        C.     The Reference To The Bankruptcy Court Should Be Withdrawn...........................31

4     V.     CONCLUSION ..................................................................................................36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memo. of P&A's in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for
Limited Stay of Proceedings and/or to Withdraw Reference of Chapter 11 Cases – Case No. C-07-02553 RMW

# TABLE OF AUTHORITIES

## CASES

Am. Cmty. Servs., Inc. v. Wright Mktg., Inc. (In re Am. Cmty. Servs., Inc.),
  86 B.R. 681 (D. Utah 1988) ............................................................................ 31

Bass v. Quittner, Stutman & Treister,
  381 F.2d 54 (9th Cir. 1967) ........................................................................... 31

Beneficial Homeowner Serv. Corp. v. Moreau (In re Moreau),
  135 B.R. 209 (Bankr. N.D.N.Y. 1992) .......................................................... 27

Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human
  Resources,
  532 U.S. 598 (2001) ....................................................................................... 19

Chem. Weapons Working Group (CWWG) v. Dept. of the Army,
  101 F.3d 1360 (10th Cir. 1996) ................................................................ 27, 28

In re City of Bridgeport,
  132 B.R. 81 (Bankr. D. Conn. 1991) .............................................................. 29

Daewoo Motor Am. v. Gulf Ins. Co. (In re Daewoo Motor Am.),
  302 B.R. 308 (C.D. Cal. 2003) .................................................................. 32, 35

Davis v. United States,
  667 F.2d 822 (9th Cir. 1982) ......................................................................... 25

Deposit Guar. Nat'l. Bank v. Roper,
  445 U.S. 326 (1980) ....................................................................................... 19

Dixon v. Wallowa County,
  336 F.3d 1013 (9th Cir. 2003) ....................................................................... 23

In re Dudley,
  2006 WL 862932 (N.D. Cal. 2006) ................................................................ 28

In re Duro Industries,
  293 B.R. 271 (B.A.P. 1st Cir. 2003) ......................................................... 21, 22

Elec. Fittings Corp. v. Thomas & Betts Co.,
  307 U.S. 241 (1939) ............................................................................ 20, 21, 24

Envtl. Prot. Info. Ctr., Inc. v. Pacific Lumber Co.,
  257 F.3d 1071 (9th Cir. 2001) ................................................... 19, 20, 21, 24

In re Garland,
  295 B.R. 347 (B.A.P. 9th Cir. 2003) .............................................................. 21

Griggs v. Provident Consumer Discount Co.,
  459 U.S. 56 (1982) ......................................................................................... 25

Hill & Sandford, LLP v. Mirzai (In re Mirzai),
    236 B.R. 8 (B.A.P. 9th Cir. 1999) .................................................................25, 26

Kennilworth Partners II LP v. Crisman,
    2001 WL 30534 (N.D. Cal. 2001) ...................................................................35

Lopez v. Heckler,
    713 F.2d 1432 (9th Cir. 1983) ........................................................................28

In re Mader,
    100 B.R. 989 (N.D. Ill. 1989) .........................................................................29

In re Martech USA, Inc.,
    188 B.R. 847 (B.A.P 9th Cir. 1995) ...............................................................19

McClatchy Newspapers v. Cent. Valley Typographical Union No. 46,
    686 F.2d 731 (9th Cir. 1982) ..........................................................................25

Mohawk Indus., Inc. v. Robinson Indus., Inc.,
    46 B.R. 464 (D. Mass. 1985) ..........................................................................34

Neary v. Padilla (In re Padilla),
    222 F.3d 1184 (9th Cir. 2000) .................................................25, 27, 31, 32, 33

Newton v. Consolidated Gas Co.,
    258 U.S. 165 (1922) ........................................................................................25

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),
    4 F.3d 1095 (2d Cir. 1993) ..............................................................................32

Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.),
    163 B.R. 41 (S.D.N.Y. 1993) ....................................................................33, 34

Parklane Hosiery Co., Inc. v. Parklane/Atlanta Venture (In re Parklane/Atlanta
    Joint Venture),
    927 F.2d 532 (11th Cir. 1991) ........................................................................31

Pimbo Corp. v. Castlerock Props. (In re Castlerock Props.),
    781 F.2d 159 (9th Cir. 1986) ..........................................................................34

Roe v. Anderson,
    134 F.3d 1400 (9th Cir. 1998) ........................................................................28

Deposit Guar. Nat'l Bank v. Roper,
    445 U.S. 326 (1980) ........................................................................................20

Ruvalcaba v. City of Los Angeles,
    167 F.3d 514 (9th Cir. 1999) ..........................................................................22

Sec. Farms v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers,
    124 F.3d 999 (9th Cir. 1997) .....................................................................32, 35

State of New York v. Nuclear Regulatory Comm'n,
    550 F.2d 745 (2d Cir. 1977) ...........................................................................25

- iv -

Sumida v. Yumen,
  409 F.2d 654 (9th Cir. 1969), cert. denied, 405 U.S. 964 (1972).......................25

Sw. Voter Registration Educ. Project v. Shelley,
  344 F.3d 914 (9th Cir. 2003) ...........................................................................28

Taylor v. Wood,
  458 F.2d 15 (9th Cir. 1972) .............................................................................25

United States v. El-O-Pathic Pharmacy,
  192 F.2d 62 (9th Cir. 1951) .............................................................................25

United States v. Good Samaritan Church,
  29 F.3d 487 (9th Cir. 1994) ......................................................................20, 23

United States v. Rogers,
  722 F.2d 557 (9th Cir. 1983) ...........................................................................31

United States v. Thorp (In re Thorp),
  655 F.2d 997 (9th Cir. 1981) ...........................................................................31

Universal Life Church, Inc. v. United States (In the Matter of Universal Life Church, Inc.),
  191 B.R. 433 (E.D. Cal. 1995) ........................................................................29

Walker v. Lockhart,
  678 F.2d 68 (8th Cir. 1982) .............................................................................28

In re Williams,
  156 F.3d 86 (1st Cir. 1998) .............................................................................19

World Solar Corp. v. Steinbaum (In re World Solar Corp.),
  81 B.R. 603 (Bankr. S.D. Cal. 1988) ..............................................................34

In re Wymer,
  5 B.R. 802 (B.A.P. 9th Cir. 1980) ...............................................................28, 29

**STATUTES**

11 U.S.C. § 502(b)(2) ...........................................................................................10

28 U.S.C. § 157(d)..........................................................................................31, 36

**MISCELLANEOUS**

Blacks Law Dictionary 11445 (7th ed. 1999) .........................................................20

Federal Rules of Appellate Procedure
  8(a)(2).............................................................................................................27
  10 ...................................................................................................................27

1

Federal Rules of Bankruptcy Procedure
     157(b)(2)(A) ............................................................................................... 34
     157(b)(2)(B) through (N) ............................................................................ 34
     157(b)(2)(O) ............................................................................................... 34
     8003(c) ........................................................................................................ 19
     8005 ..................................................................................................... 26, 27
     9021 ............................................................................................................ 21

Federal Rule of Civil Procedure
     58 ............................................................................................................... 21

10 Collier on Bankruptcy ¶ 8005.10 (15th ed. Rev. 2006) ......................................... 27

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- vi -

## I.    INTRODUCTION

Appellants Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd. (collectively, the "Senior Noteholders") hereby oppose (the "Opposition") the Motion to Dismiss Appeal (the "Motion") filed by the Chapter 11 Trustee and submit this memorandum of points and authorities in support of the Opposition as well as their Cross-Motions for a Limited Stay of Proceedings and/or to Withdraw the Reference of Chapter 11 Cases (the "Cross-Motions").

Principally at issue is a March 26, 2007 opinion and order of the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") that, among other things, appointed a Chapter 11 Trustee in an effort to correct what the Bankruptcy Court termed "the complete breakdown of creditor confidence" stemming from a conflict of interest suffered by the debtors' attorneys, Pillsbury, Winthrop, Shaw Pittman LLP f/k/a Pillsbury Winthrop LLP ("Pillsbury") (the "First Opinion").    (Appellants Designation of Record ("ADR"), Ex. 49 at 1 [Docket No. 2220];[1] Request for Judicial Notice ("RJN"), Ex. 7 at 1.) At the time the Chapter 11 Trustee was appointed, it was suggested that this conflict of interest caused Pillsbury to assist in brokering a settlement agreement containing a term that was favorable to the Senior Noteholders.

In essence then, the "breakdown" arose in connection with the manner in which the settlement was negotiated, proposed, and ultimately approved in the Bankruptcy Court.   Importantly, however, no party-in-interest has claimed that the settlement was not in the best interests of the estates.   The only party claiming to be harmed by the settlement is a party who had the benefit of full disclosure and representation by counsel in connection with the allegedly offending settlement provision, and the allegedly offending settlement provision did not cost the debtors' estates anything as it was in the nature of an agreed clarification of a pre-petition agreement.

Also noteworthy is the uncontroverted circumstances of the conflict of interest:  it stemmed from a dispute between Pillsbury and the Senior Noteholders that arose more than three months *after* the allegedly offending settlement provision was proposed (and approximately one year after

---

[1]    Unless otherwise indicated, all docket entries referenced herein are on the record in the Chapter 11 cases pending before the Bankruptcy Court, Case No. 03-51775.

-1-

1  the provision was agreed to in principle) and almost three months *after* it was agreed to by the party

2  allegedly harmed by it. And the actual conflict of interest touched only *one* of the debtors' two law

3  firms that advised the debtors in connection with the settlement. No one has suggested, nor can

4  they, that the second law firm ever suffered under any conflict of interest.

5       No party-in-interest – not the Senior Noteholders, the non-debtor party to the settlement, the

6  debtors (through either law firm), or the initial official committee of unsecured creditors – affirma-

7  tively disclosed the allegedly offending settlement provision, which only affected the Senior Note-

8  holders and the non-debtor party to the settlement, in a settlement that everyone still agrees was in

9  the best interests of the estate. While the allegedly offending settlement provision may not have

10  been specifically highlighted or called to the Bankruptcy Court's attention, *it was included in pa-*

11  *pers submitted to the Bankruptcy Court*. With perfect hindsight, of course, it would be foolish to

12  dispute that this settlement term should have been affirmatively disclosed. The fact that so many

13  parties failed to make an affirmative disclosure, however, strongly suggests that the failure was in-

14  advertent, and the fact that the settlement remains undisputedly a "good deal" confirms that no

15  harm was done.

16       Against this backdrop (but without consideration of any of the foregoing undisputed cir-

17  cumstances), the Bankruptcy Court appointed a Chapter 11 Trustee to investigate the facts and cir-

18  cumstances surrounding the settlement, which appointment the Senior Noteholders did not oppose.

19  In its opinion, the Bankruptcy Court conceded that the Senior Noteholders' motive in connection

20  with the settlement was "not known." (RJN, Ex. 7 at 17.) Yet in the same opinion, the Bankruptcy

21  Court purported to find facts regarding the alleged, but unsubstantiated, behavior of the Senior

22  Noteholders' counsel that demonstrated improper motives. (Id.) And in the later, related clarifica-

23  tion opinion, the Bankruptcy Court erroneously concluded that there was an "appearance of con-

24  cealment" and that the participation by the largest creditors in the single most important settlement

25  to the estates was "unusual" (the "Clarification Denial Order" and, collectively with the First Opin-

26  ion, the "Orders"). (ADR, Ex. 57 at 3-4 [Docket No. 2279]; RJN, Ex. 11 at 3-4.)

27

28

Memo. of P&A's in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for
Limited Stay of Proceedings and/or to Withdraw Reference of Chapter 11 Cases – Case No. C-07-02553 RMW

1    Because these, and other, findings in the Orders were unnecessary to the motions before the

2    Bankruptcy Court, clearly erroneous, and unsupported by the record, the Senior Noteholders filed

3    this appeal (the "Appeal").  The Chapter 11 Trustee has moved to dismiss the Appeal on the

4    grounds that this Court does not possess jurisdiction to review factual findings contained in the Or-

5    ders where the Senior Noteholders have not challenged the results reached in the Orders.  (Mot. at

6    2, 6-7.)  Although the Chapter 11 Trustee correctly states the general rule that only a party "ag-

7    grieved" by a judgment or order may appeal therefrom, the Ninth Circuit has recognized prudential

8    exceptions to the "prevailing party" rule, and the Senior Noteholders satisfy those exceptions.

9    Therefore, the Senior Noteholders are deemed "aggrieved" by the Orders and have standing to ap-

10   peal.  Specifically, because the Orders contain discussions of issues that are immaterial to the mo-

11   tions that were before the Bankruptcy Court, the Senior Noteholders may seek reformation of the

12   Orders.  Furthermore, for the reasons set forth herein, the Orders may be appealed because they

13   could potentially serve as the basis for collateral estoppel in subsequent litigation.

14   Following entry of the Orders and the filing of this Appeal, the Bankruptcy Court again re-

15   lied upon the disputed findings of "fact," without any evidentiary hearing, to reconstitute the credi-

16   tors committee, and these same findings have recently spawned two separate motions for relief

17   from the order approving the settlement.  Because the Bankruptcy Court has more than once relied

18   on certain factual findings in granting relief, however, the Senior Noteholders also file concurrently

19   herewith the Cross-Motions.

20   The Senior Noteholders have no opposition to a full and fair investigation of their conduct

21   in these bankruptcy cases; however, to date, the Senior Noteholders have had no opportunity to be

22   heard.  The Senior Noteholders file the accompanying Cross-Motions, therefore, to ensure they

23   have the opportunity to present a full and accurate picture regarding their conduct and, perhaps

24   more importantly, to avoid the waste of estate resources in the underlying Chapter 11 cases.

25

26

27

28

-3-

1    II.    **STATEMENT OF FACTS**

2        A.    **The Senior Noteholders And The Debtor**

3            In April 2002, in the face of mounting economic pressure caused by faltering finances,

4    SONICblue, Incorporated (the "Debtor" or "SONICblue"),[2] negotiated the issuance of senior se-

5    cured subordinated convertible debentures (the "Senior Notes") with the Senior Noteholders in the

6    amount of $75 million, pursuant to an indenture dated as of April 22, 2002 (the "Indenture").[3]

7    (ADR, Exs. 20 at 32:3-11 [Docket No. 2136], 37, Declaration of Ana N. Damonte ("Damonte Dec-

8    laration") at ¶¶ 2-9 [Docket No. 2182]; RJN, Exs. 53 at 32:3-11, 35 at ¶¶ 2-9.)  Significantly for

9    this case, one provision of the Indenture provided that the Senior Notes were subordinate to certain

10   other obligations ("Senior Indebtedness" and the "Senior Indebtedness Provision"), including "[a]ll

11   indebtedness of [SONICblue] due and owing to Via Technologies, Inc. [("VIA")] in an aggregate

12   principal amount not to exceed $15,000,000 or the equivalent thereof in any other currency or

13   composite currency."[4]  (ADR, Ex. 37, Indenture, at Section 1.1 (g) [Docket No. 2182]; RJN, Ex.

14   35, Indenture, at Section 1.1(g).)

15       B.    **The Bankruptcy Cases**

16           Just ten months after it issued the Senior Notes, due to the continued deterioration of the

17   Debtors' businesses, it became necessary for the Debtors to file for bankruptcy protection.  On

18   March 21, 2003 (the "Petition Date"), therefore, each of the Debtors commenced a Chapter 11 case

19   by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the

20   "Bankruptcy Code") in the Bankruptcy Court.  These Chapter 11 cases were procedurally consoli-

21   dated for administrative purposes, and these petitions were assigned to United States Bankruptcy

22   Judge Marilyn Morgan in case numbers 03-51775-035178-MM (the "Bankruptcy Cases").  That

23   same day, the Office of the United States Trustee (the "U.S. Trustee") appointed the Senior Note-

24   _____

     [2]    The Debtor, a Delaware corporation formerly known as S3 Inc., is a consumer electronics com-
25   pany.  Debtors ReplayTV, Inc., Sensory Science Corp., and Diamond Multimedia Systems Inc. are
     wholly-owned subsidiaries of SONICblue.  Collectively, these entities are the debtors (the "Debt-
26   ors") herein.
     [3]    Pillsbury was the Debtor's counsel during these negotiations.  It had been the Debtor's general
27   corporate and litigation counsel for many years.
     [4]    In 2001, VIA and the Debtor formed a joint venture—S3 Graphics Co., Ltd. ("S3G").
28
                                          - 4 -

1 holders to the initial Official Committee of Unsecured Creditors (the "Initial Creditors Commit-

2 tee"). (ADR, Ex. 1 [Docket No. 26]; RJN, Ex. 36.) Each of the Senior Noteholders filed a proof of

3 claim (the "Indenture Claims") related to the Senior Notes.

4      Pillsbury again was retained by the Debtors, and Hennigan, Bennett & Dorman LLP

5 ("HBD") represented the Senior Noteholders in connection with the Bankruptcy Cases. Levene,

6 Neale, Bender, Rankin & Brill LLP ("LNBRB") was appointed as counsel for the Initial Creditors

7 Committee.

8           **1.**      **The Initial Creditors Committee**

9      In addition to being appointed to the Initial Creditors Committee, the U.S. Trustee included

10 the Senior Noteholders in all subsequent amended appointments to the Initial Creditors Committee.

11 (ADR, Exs. 6 [Docket No. 119], 8 [Docket No. 528]; RJN. Exs. 36, 37, 38.)  At first, all eight

12 members of the Initial Creditors Committee participated actively, (ADR, Ex. 39, Declaration of

13 Ron Bender ("Bender Declaration") at ¶ 24 [Docket No. 2185]; RJN, Ex. 45 at ¶ 24), but after

14 2003, only the Senior Noteholders, Matsushita Kotobuki Electronics Sales of America LLC, and

15 Matsushita Kotbuki Electronics Industries were truly involved, (RJN, Exs. 45 at ¶¶ 24-27, 53 at

16 5:15-6:6).

17      From the time of their appointment through the filing of this appeal, the Senior Noteholders

18 were openly active members of the Initial Creditors Committee.  The other key actors in the Bank-

19 ruptcy Cases – including, for example, the Debtors, Pillsbury, VIA, and Ron Bender of LNBRB –

20 were well aware that the Senior Noteholders were members of the Initial Creditors Committee and

21 that Bruce Bennett of HBD represented the Senior Noteholders as such—*not the Initial Creditors*

22 *Committee*. Every document contained in the record supports this view, and that they functioned as

23 separate and distinct parties. (See, e.g., ADR, Exs. 2 at ¶ 4 [Docket No. 28]; 3 at 1-2 [Docket No.

24 43]; 4 at ¶¶ 11-12 [Docket No. 63]; 5 at ¶¶ 7-8 [Docket No. 64]; 7 at 1 [Docket No. 334]; 10 at 1

25 [Docket No. 545]; RJN, Ex. 35, Declaration of Albert J. Boro ("Boro Decl.") at ¶¶ 10, 14 ("Follow-

26 ing that, we spoke with Mr. Bennett, counsel for the Senior Noteholders ...."), 17-18, 25; RJN,

27 Exs. 45, Bender Decl. at ¶ 4, 40 at 1-2, 41 at ¶¶ 11-12, 42 at ¶¶ 7-8, 43 at 1, 44 at 1, 45 at ¶¶ 13 n.1,

28

1  27.)[5]  What is more, as made clear by the Senior Noteholders, "[n]o issues put before the [Initial]

2  Creditors' Committee have been determined by the Senior Noteholders alone." (ADR, Ex. 36 at 2

3  [Docket No. 2181]; RJN, Ex. 46 at 2.)  Finally, the Senior Noteholders never participated in an Ini-

4  tial Creditors Committee vote "relating to an issue in which the senior noteholders had a distinct

5  interest ...." [ADR, Ex. 50 at 37:17-20 [Docket No. 2226]; RJN, Ex. 47 at 37:17-20.)

6  　　　　　**2.    The VIA Litigation And The Intel Motion**

7  　　　　Since its formation, VIA and the Debtor have had a contentious relationship regarding

8  S3G—their joint venture.  On June 6, 2003, Intel Corporation ("Intel") filed a motion seeking, *inter*

9  *alia*, to terminate a patent licensing agreement with the Debtor related to its use by S3G (the "Intel

10  Motion").  Since Pillsbury had previously represented Intel, the Debtor hired O'Melveny & Meyers

11  LLP ("OMM") as independent, special litigation counsel respecting the Intel Motion.  (RJN, Ex.

12  35, Boro Decl. at ¶ 4.)  Then, on July 17, 2003, VIA and S3G filed duplicate proofs of claim for

13  $70 million in the Bankruptcy Cases based on an alleged breach of their joint venture agreement,

14  involving the patent licensing agreement that was the subject of the Intel Motion.  (RJN, Ex. 35,

15  Boro Decl. at ¶ 2.)  The Debtor objected to these claims, and subsequently, on December 21, 2004,

16  the Debtor filed an adversary complaint against VIA and S3G (the "VIA Litigation").  (Appellee's

17  Designation of Record ("APDR"), Ex. 74 [Docket No. 42]; RJN, Ex. 48.)

18  　　　　　**3.    The VIA Settlement Negotiations**

19  　　　　According to the Bankruptcy Court, the resolution of the Intel Motion and the settlement of

20  the duplicate claims were the major impediments towards bringing the Bankruptcy Cases to a con-

21

22

23  　[5]　For example, on October 9, 2003, the parties involved in the VIA Litigation and Intel Motion
described below were entered into a Stipulated Protective Order (the "Protective Order") that was signed
24  by the Bankruptcy Court on October 17, 2003.  It is clear from the face of the Protective Order that
these parties viewed the Senior Noteholders and the Initial Creditors Committee as separate and
25  distinct entities to be covered by the Protective Order.  Significantly, the attorneys from LNBRB
and HBD were separately given designations to view documents under the Protective Order.
26  (ADR, Ex. 9 at 3-5[Docket No. 529]; RJN, Ex. 64 at 3-5.)  Finally, the Protective Order was signed
by counsel for the Senior Noteholders as "Attorneys for the Senior Debtholders," and the Protec-
27  tive Order was separately executed by counsel for the Initial Creditors Committee.  (RJN, Ex. 64 at
12.)
28

Memo. of P&A's in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for
Limited Stay of Proceedings and/or to Withdraw Reference of Chapter 11 Cases – Case No. C-07-02553 RMW

1   clusion.[6] (RJN, Ex. 7 at 17 ("During the past year and a half, SONICblue's litigation against VIA

2   and [S3G] has been the main roadblock to the proposal of a plan and the conclusion of this case.").)

3   Settlement negotiations between the parties began in August 2005 (the "VIA Settlement Negotia-

4   tions"). HBD, and by extension Mr. Bennett, were involved in the VIA Settlement Negotiations

5   solely as counsel for the Senior Noteholders. (RJN, Ex. 35, Boro Decl. at ¶¶ 10, 14, 17-18, 25.)

6   There is nothing in the record to indicate that any party involved in the VIA Settlement Negotia-

7   tions somehow thought otherwise.  (See, e.g., RJN, Ex. 35, Boro Decl. at ¶ 10.)  Although an

8   agreement was reached in principle in September 2005, it was not until late September 2006 that

9   the VIA Settlement Negotiations produced a finalized agreement (the "VIA Settlement Agree-

10  ment"). (APDR, Exs. 63 [Docket No. 1950], 64 [Docket No. 1951], 65 [Docket No. 1955], 67

11  [Docket No. 2057]; RJN, Exs. 49-52.)

12        The first settlement meeting occurred on August 11, 2005, and was attended by representa-

13  tives of VIA and the Debtor. (RJN, Ex. 35, Boro Decl. at ¶ 9.) There, VIA contended that its al-

14  lowed claim should be $42.5 million. The Debtor countered that an allowed claim of $6 million

15  might be acceptable, but that the Initial Creditors Committee needed to approve before a formal

16  offer could be made. (RJN, Ex. 35, Boro Decl. at ¶ 9.) After the attorneys for the Initial Creditors

17  Committee consulted with Mr. Bennett on behalf of the Senior Noteholders, they authorized the

18  Debtor to counter with a settlement offer of $6 million. (RJN, Ex. 35, Boro Decl. at ¶ 10.) Pills-

19  bury believed that the consent of the Senior Noteholders to the terms of any settlement was essen-

20  tial to court approval.[7] (RJN, Ex. 35, Boro Decl. at ¶ 11.) And Mr. Bennett confirmed on August

21  30, 2005 that the Senior Noteholders would support a $6 million counteroffer. (RJN, Ex. 35, Boro

22  Decl. at ¶ 10.)

23

24

25  [6]   According to the Bankruptcy Court, "[t]his litigation was also significant because termination
26  of [the intellectual property rights] would arguably trigger the liquidated damages provision of the
    joint venture agreement [between VIA and the Debtor]." (RJN, Ex. 7 at 7.)
27  [7]   At both the August and September 2005 settlement meetings, the parties discussed that VIA's
    claim would be given the same priority as other general unsecured creditors. (RJN, Ex. 35, Boro
28  Decl. at ¶ 15.)

1    Following this meeting, Pillsbury participated in settlement discussions with the Debtor's

2  independent, special litigation counsel, OMM, LNBRB for the Initial Creditors Committee, and

3  Mr. Bennett on behalf of the Senior Noteholders. (RJN, Ex. 35, Boro Decl. at ¶ 11.) Based on

4  those discussions, Pillsbury concluded that a global settlement that included Intel was necessary

5  and that a settlement amount of less than $25 million would be acceptable to the Initial Creditors

6  Committee. (RJN, Ex. 35, Boro Decl. at ¶ 11.) On September 12, 2005, counsel for VIA sent

7  Pillsbury a draft settlement term sheet proposing that VIA be allowed a general unsecured claim in

8  the amount of $27.5 million. (RJN, Ex. 35, Boro Decl. at ¶ 12.)

9    In a subsequent settlement meeting held on September 15, 2005,[8] VIA and S3G reduced

10  their settlement demand to $19 million. (RJN, Ex. 35, Boro Decl. at ¶ 14.) Following that meet-

11  ing, Pillsbury spoke with Mr. Bennett who indicated that his clients would only support an allowed

12  claim of $10 million. (RJN, Ex. 35, Boro Decl. at ¶ 14.) After consulting with the Debtor, it au-

13  thorized a $10 million counteroffer. (RJN, Ex. 35, Boro Decl. at ¶ 14.) Later that day, counsel for

14  the various parties tentatively agreed to a settlement amount of $12.5 million subject to client and

15  creditor approval. (RJN, Ex. 35, Boro Decl. at ¶ 14.) On September 20, 2005, Mr. Bennett con-

16  firmed the Senior Noteholders' agreement to a $12.5 million allowed claim; provided that the set-

17  tlement included, *inter alia*, a provision that the VIA/S3G allowed claim (the "VIA/S3G Allowed

18  Claim") be neither senior nor junior to other general unsecured claims. (RJN, Ex. 35, Boro Decl. at

19  ¶ 17.) And the Senior Noteholders did so, because, under the transactional facts fully known to

20  everyone, the VIA/S3G Allowed Claim would not constitute Senior Indebtedness. (See RJN, Exs.

21  35, Boro Decl. at ¶¶ 15-17, 45 at ¶ 40.)

22    In a conference call that same day with VIA and S3G, the Debtor accepted the settlement

23  terms so long as the VIA/S3G Allowed Claim be neither senior nor junior to other general unse-

24  cured claims. (RJN, Ex. 35, Boro Decl. at ¶ 17.) VIA and S3G did not object to this language and

25

---

26  [8]  At the time of the September 15, 2005 settlement meeting, Mr. Boro was aware of the Senior
    Indebtedness Provision contained in the Senior Debenture, (RJN, Ex. 35, Boro Decl. at ¶ 15), and
27  he came to the conclusion that the Senior Indebtedness Provision contemplated a loan that had
    never occurred, (RJN, Ex. 35, Boro Decl. at ¶ 17). This provision was not discussed at the Sep-
28  tember 15, 2005 meeting. (RJN, Ex. 35, Boro Decl. at ¶ 15.)

1  "wanted to include language that Defendants could decide how to allocate the allowed claim

2  among Defendants." (RJN, Ex. 35, Boro Decl. at ¶ 17.) On September 22, 2005, the "neither sen-

3  ior nor junior" language again was discussed by Pillsbury with counsel for VIA and S3G. (RJN,

4  Ex. 35, Boro Decl. at ¶ 17.) Counsel for VIA and S3G "posed questions about subordination of the

5  claims of the Senior Noteholders and other creditors, and expressed concern that other creditors not

6  unduly benefit at their clients' expense, but they nevertheless agreed that their [allowed] claim was

7  neither senior nor junior to other general unsecured claims." (RJN, Ex. 35, Boro Decl. at ¶ 17.)

8          On September 26, 2005, counsel for the Debtor and VIA finalized a draft of the proposed

9  settlement term sheet, which included the following provision:

10          Claimants shall jointly hold a single, allowed general unsecured
           claim in the Chapter 11 case of SONICblue Inc., which claim shall be
11          afforded the benefits and priority of SONICblue's other allowed gen-
           eral unsecured claims and shall be neither senior nor junior to any
12          other allowed general unsecured claim, in the amount of $12.5 mil-
           lion.
13

14  (RJN, Ex. 35, Boro Decl. at ¶ 18.)

15          Mr. Boro sent the proposed term sheet to Mr. Bennett on behalf of the Senior Noteholders

16  and to LNBRB on behalf of the Initial Creditors Committee on September 27, 2005. (RJN, Ex. 35,

17  Boro Decl. at ¶ 18.) In a conference call held later that day, the Initial Creditors Committee ap-

18  proved the settlement terms. (RJN, Ex. 35, Boro Decl. at ¶ 18.) Apparently, finalizing the settle-

19  ment between the Debtor, VIA, and S3G was delayed and made complicated by the difficulty in

20  reaching a resolution with Intel. (RJN, Ex. 35, Boro Decl. at ¶ 19.) Thus, the initial draft of a set-

21  tlement agreement was not prepared until January 25, 2006, when OMM circulated a draft that con-

22  tained a provision dealing with the VIA/S3G Allowed Claim that read substantially the same as the

23  one in the September 26, 2005 term sheet. (RJN, Ex. 35, Boro Decl. at ¶ 19.)

24          In April or early May 2006, Pillsbury proposed that the settlement agreement include lan-

25  guage specifically stating that the VIA/S3G Allowed Claim was not "Senior Indebtedness" as set

26  forth in the Senior Notes. (RJN, Ex. 35, Boro Decl. at ¶ 20.) Then, on May 12, 2006, OMM circu-

27  lated a revised draft with the following language added:

28
Memo. of P&A's in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for
Limited Stay of Proceedings and/or to Withdraw Reference of Chapter 11 Cases – Case No. C-07-02553 RMW

> Claimants and the Debtor agree that the Allowed Claim is not, and shall not be treated as, "Senior Indebtedness" under the terms of the Debtor's Indenture, dated as of April 22, 2002, for the 7-¾ Secured Senior Subordinated Convertible Debentures due 2005.

(the "Waiver Provision") (RJN, Ex. 35, Boro Decl. at ¶ 17.)   At a June 1, 2006 settlement meeting, the parties discussed proposed language waiving any claim that the settlement amount constituted Senior Indebtedness under the Senior Notes. (RJN, Ex. 35, Boro Decl. at ¶ 23.)  Stating that it was aware of the Senior Indebtedness Provision and understood that it related to a loan that never occurred, VIA agreed to that limitation.  (RJN, Ex. 35, Boro Decl. at ¶ 23.)  Substantially the same language was included in a later revised draft circulated on June 16, 2006 and in the final VIA Settlement Agreement. (RJN, Ex. 35, Boro Decl. at ¶ 24.)

Therefore, pursuant to the VIA Settlement Agreement, VIA and S3G agreed, *inter alia*, to settle in exchange for a general unsecured allowed claim of $12.5 million that was not "Senior Indebtedness" as described in the Senior Notes. (RJN Ex. 35, Settlement Agreement, at § 3.)  On October 10, 2006, the Debtor filed a motion to approve the VIA Settlement Agreement, which was granted on October 31, 2006.  (APDR, Ex. 66 [Docket No. 1981]; RJN, Exs. 49-52.)

### 4.    The Original Issue Discount And The 2002 Opinion Letter

As counsel for the Debtor during the negotiations for the Senior Notes, Pillsbury issued an opinion letter to the Senior Noteholders regarding the enforceability of the Senior Notes (the "2002 Opinion Letter"). (RJN, Ex. 35, Freeman Decl. at ¶ 5.)  Later, in its capacity as counsel for the Debtor in the Bankruptcy Cases, Pillsbury was involved in evaluating possible objections to claims—including those of the Senior Noteholders.  (RJN, Ex. 35, Declaration of William B. Freeman ("Freeman Declaration") at ¶ 6.)  On July 20, 2006, Pillsbury informed the Senior Noteholders that their claim would be challenged as it was based on unamortized original issue discount and thus subject to disallowance under 11 U.S.C. § 502(b)(2) (the "OID Issue").  (RJN, Ex. 35, Freeman Decl. at ¶¶ 6-7.)

Mr. Bennett contacted Pillsbury, on behalf of the Senior Noteholders, on August 24, 2006 to discuss the OID Issue and the 2002 Opinion Letter. (RJN, Ex. 35, Freeman Decl. at ¶ 7.)  Thereafter, on September 5, 2006, HBD sent a letter to Pillsbury that demanded indemnification from

- 10 -

1   Pillsbury for any possible loss due to the OID Issue (the "Indemnification Demand") based on the

2   2002 Opinion Letter.[9]  (RJN, Ex. 35, Declaration of Craig A Barbarosh ("Barbarosh Decl.") at ¶

3   14.)  According to the Senior Noteholders, the 2002 Opinion Letter clearly took the position that

4   the Senior Notes would not be affected or limited by applicable bankruptcy laws.  (RJN, Ex. 35,

5   Barbarosh Decl. at ¶ 11.)  Pillsbury, in turn, maintained that the 2002 Opinion Letter did nothing of

6   the sort.  (RJN, Ex. 35, Barbarosh Decl. at ¶ 11.)

7       In response to the Indemnification Demand, Pillsbury immediately notified Mr. Bender that

8   Pillsbury had a conflict.  (RJN, Ex. 35, Barbarosh Decl. at ¶ 13.)  Pillsbury then transferred the re-

9   sponsibility for handling the Senior Noteholders' claims to Mr. Bender and the Initial Creditors

10  Committee.  (ADR, Ex. 37, Freeman Decl. at ¶¶ 8-11.)  Regardless of the 2002 Opinion Letter's

11  meaning, Pillsbury's failure to properly disclose the conflict caused by the 2002 Opinion Letter

12  (the "Conflict of Interest") led to its eventual disqualification and the cloud that has been cast over

13  these Bankruptcy Cases.  (RJN, Ex. 7 at 14-16.)

14          **5.    The Initial Disclosure Statement**

15      On December 15, 2006, the Debtor and the Initial Creditors Committee jointly filed a dis-

16  closure statement.  (ADR, Ex. 11 [Docket No. 2047]; RJN, Ex. 54.)  On, January 11, 2007, River-

17  side Contracting, LLC and Riverside Claims, LLC (collectively, "Riverside") filed objections to

18  that disclosure statement.  (ADR, Exs. 13 [Docket No. 2091], 17 [Docket No. 2115]; RJN, Exs. 55-

19  56.)  While most of Riverside's objections were addressed by the filing of a First Amended Disclo-

20  sure Statement (the "Amended Disclosure Statement"), (ADR, Ex. 14 [Docket No. 2103]; RJN, Ex.

21  62), on January 17, 2007, Riverside filed a supplemental objection (collectively with the original

22  objections, the "Riverside Objections") and continued to object to what it described as "inadequate

23  information relating to the [VIA Settlement Agreement] ....  Without such information, creditors

24  cannot make an intelligent and informed decision as to whether to accept or reject the Plan."  (RJN,

25

26

_____

27  [9]    Thus, the language in the VIA Settlement that related to the Waiver Provision was a part of the
    VIA Settlement Agreement several months before the OID Issue arose and the Senior Noteholders
28  sent Pillsbury the Indemnification Demand.

1    Ex. 56 at 1-2.) On January 22, 2003, Argo Partners, Inc. ("Argo"),[10] a claims trader, also filed ob-

2    jections based on what it portrayed as inadequate disclosure related to the VIA Settlement Agree-

3    ment. (ADR, Ex. 18 at 2-3 [Docket No. 2116]; RJN, Ex. 57.)

4         On January 23, 2007, the Bankruptcy Court held a hearing to approve the Amended Disclo-

5    sure Statement. (RJN, Ex. 53.) At this hearing, Mr. Bender addressed (among other issues) the

6    constitution of the Initial Creditors Committee and that, as far as he was aware, VIA had acknowl-

7    edged that the VIA/S3G Allowed Claim was not Senior Indebtedness under the Senior Notes.[11]

8    (ADR, Ex. 20 at 5:3-6:24, 24:2-24:6; RJN, Ex. 53 at 5:3-6:24, 24:2-24:6.) Significantly, Mr.

9    Bender consistently has maintained that the Initial Creditors Committee was very pleased with the

10    VIA Settlement Agreement, (see, e.g., RJN, Exs. 45 at ¶ 45, 53 at 11:14-18), and that everyone

11    recognized that the VIA Settlement Agreement was a very good deal, (see, e.g., RJN, Ex. 53 at

12    11:14-18). Based in large part on the issues raised in the Riverside Objections and by Argo, the

13    Bankruptcy Court directed Mr. Bender to investigate the circumstances surrounding the VIA Set-

14    tlement Negotiations and to file a status report, (RJN, Ex. 53 at 47:1-50:15), which he did on Feb-

15    ruary 14, 2007, (ADR, Ex. 21 [Docket No. 2138]; RJN Ex. 58). At a February 15, 2007 hearing,

16    where Mr. Bennett appeared on behalf of the Senior Noteholders, the Bankruptcy Court directed

17    Mr. Bender to stop investigating the matter further. (ADR, Ex. 34 at 12:14-19 [Docket No. 2176];

18    RJN, Ex. 59 at 12:14-19).

19         **6.**      **The Orders**

20         Various motions were filed in response to the questions raised by Pillsbury's failure to af-

21    firmatively disclose its conflict with the Senior Noteholders, the Waiver Provision, and the VIA

22    Settlement Negotiations. The U.S. Trustee filed a Motion To Appoint Chapter 11 Trustee, Or In

23    The Alternative Motion To Appoint Examiner (the "Trustee Motion") (ADR, Exs. 28 [Docket No.

24

25    [10]   Argo owns a 50% interest in SonicBlue Claims, LLC ("SB Claims")—also a claims trader.
(ADR, Ex. 27 at 2 [Docket No. 2150]; RJN, Ex. 61.) SB Claims did not exist at the time Argo filed

26    its objections. SB Claims, however, now is the successor-in-interest to certain rights of VIA and
S3G under the VIA Settlement Agreement. (RJN, Ex. 45 at ¶ 5.)

27    [11]   Mr. Bender was informed repeatedly by VIA that it knowingly waived any claim to Senior In-

28    debtedness when it entered into the VIA Settlement Agreement. (RJN, Ex. 45 at ¶¶ 35, 45-47.)

1  2153], 30 [Docket No. 2168]; RJN, Exs. 2, 4), and a Motion To Disqualify Pillsbury Winthrop

2  Shaw Pittman LLP, To Vacate Employment Order, And For Disgorgement Of Attorneys' Fees (the

3  "Disqualification Motion"). (ADR, Ex. 29 [Docket No. 2163]; RJN, Ex. 3.) Not to be left out, SB

4  Claims filed a Motion To Convert Case To Chapter 7 (the "Chapter 7 Motion"). (ADR, Exs. 31

5  [Docket No. 2171], 32 [Docket No. 2173]; RJN, Exs. 5-6.)

### a)    The First Opinion

7      The Bankruptcy Court held a hearing on March 19, 2007 to address these motions. (RJN,

8  Ex. 47.) Mr. Bennett again appeared on behalf of the Senior Noteholders. (RJN, Ex. 47 at 6:19-

9  21.) On March 26, 2007, the Bankruptcy Court issued the First Opinion, which appointed a Chap-

10 ter 11 Trustee, declined to convert the case from Chapter 11 to Chapter 7, and disqualified Pills-

11 bury. (RJN, Ex. 7.)

### b)    The Clarification Denial Order

13     On April 4, 2007, the Senior Noteholders filed a Motion For Clarification, Or In The Alter-

14 native, Leave To File A Motion For Reconsideration (the "Clarification Motion"). (ADR, Ex. 51

15 [Docket No. 2231]; RJN, Ex. 8.) The Clarification Motion sought "clarification or reconsideration

16 of certain statements in the [First Opinion], which could be misconstrued as suggesting that the

17 Court made certain factual findings or conclusions unnecessary to the decision of the motions be-

18 fore the Court and unsupported by the record." (RJN, Ex. 8 at 1.) Specifically, the Senior Note-

19 holders were concerned that the following statements in the First Opinion could be misconstrued:

20     1. The rights to use Intel's graphics patents were so important that
       the joint venture agreement included a liquidated damages clause at
21     article 5.6 entitling the joint venture and VIA each to damages of up
       to $70 million if the joint venture were ever enjoined from using the
22     Intel cross-license; and

23     2. Because the bondholders appear to have used their position on the
       committee to insert themselves into the settlement negotiations with-
24     out revealing a hidden agenda, they may have breached their fiduci-
       ary duty to the unsecured creditor body. Whether their motive was
25     simply to save litigation costs for the estate by avoiding future litiga-
       tion over the priority of VIA's claim, or, instead, to assure a larger re-
26     turn on their individual investments is not known. In fact, as Bennett
       noted, he had never personally appeared in court until March 19,
27     2007. During the four years of this case, he has operated in the shad-

28

- 13 -

Memo. of P&A's in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for
Limited Stay of Proceedings and/or to Withdraw Reference of Chapter 11 Cases – Case No. C-07-02553 RMW

1    ows and, until January 23, 2007, it was not generally known to this
2    court or the creditor body that the three senior bondholders were
     serving on the Committee (collectively, the "Findings").

3    (RJN, Ex. 8 at 1.)

4        After a hearing respecting the Clarification Motion on May 4, 2007, (ADR, Ex. 61 [Docket

5    No. 2303]; RJN, Ex. 60), the Bankruptcy Court immediately issued its Clarification Denial Order

6    denying the Clarification Motion. (ADR, Ex. 57 [Docket No. 2279]; RJN, Ex. 11.) The Bank-

7    ruptcy Court began the Clarification Denial Order by stating: "Let there be no doubt that the words

8    and findings of my [First Opinion] were carefully selected to respond to the issues then before the

9    court ...." (RJN, Ex. 11 at 1.) The Bankruptcy Court then provided additional facts to support its

10   characterization of the Senior Noteholders and Mr. Bennett in the First Opinion. Although Mr.

11   Bennett was under no duty to volunteer information to Mr. Bender and Mr. Bender had described

12   him as extremely cooperative during his investigation,[12] the Bankruptcy Court nonetheless found

13   that "it does not appear that Bennett ever volunteered relevant information despite the ongoing in-

14   vestigation and Bender's active efforts to pursue answers." (RJN, Ex. 11 at 3.) The Bankruptcy

15   Court concluded by stating that "[t]he appearance of concealment by the senior noteholders and

16   Bennett was one of the grounds for the appointment of a trustee." (RJN, Ex. 11 at 4.)

17       Since his appointment, the Chapter 11 Trustee has undertaken a comprehensive investiga-

18   tion into: (1) the conduct of professionals and other fiduciaries in the Bankruptcy Proceedings

19   prior to his appointment, including Pillsbury and LNBRB; and (2) the circumstances leading up to

20   and surrounding the VIA Settlement Agreement (the "Trustee Investigation").

21              **c)    The Notice Of Appeal**

22       In response to the Orders, the Senior Noteholders filed their Notice of Appeal on May 11,

23   2007. (ADR, Ex. 58 [Docket No. 2292]; RJN, Ex. 33.) The Senior Noteholders appeal the Orders

24
     _____

25   [12] According to Mr. Bender, Mr. Bennett did everything he was asked in connection with Mr.
     Bender's investigation. For example, Mr. Bender described Mr. Bennett as having "been ex-
26   tremely cooperative from the outset." (ADR, Ex. 21, Declaration of Ron Bender in Support of His
     Submission of Preliminary Status Report ("Bender Status Report Decl.") at ¶ 25 [ Docket No.
27   2138]; RJN, Ex. 58 at ¶ 25.) Mr. Bender also stated that Mr. Bennett had made a complete docu-
     ment production and was scheduled to be deposed before Mr. Bender continued it to allow for a
28   ruling on confidential documents. (RJN, Ex. 58 at ¶ 25.)

                                          - 14 -

1   on the basis that the Bankruptcy Court: (1) mistakenly determined that VIA has a claim against the

2   Debtor related to the loss of the use of the patent licensing agreement by S3G and the liquidated

3   damages remedy for that loss (the "VIA Claim Issue"); and (2) mistakenly made conclusions re-

4   garding the role of the Senior Noteholders and their counsel during the VIA Settlement Negotia-

5   tions (the "Senior Noteholders Issue," collectively with the VIA Claim Issue, the "Appellate Is-

6   sues"). (RJN, Ex. 66 at 7 [Docket No. 2308].)

7               7.    **The Adversary Proceeding**

8          SB Claims acquired the VIA/S3G Allowed Claim on April 27, 2007. This was, however,

9   *after* all of the alleged improper conduct by Pillsbury and the Senior Noteholders had occurred.

10  But it is this alleged conduct that forms the basis for the relief requested in the Adversary Proceed-

11  ing and the Motions for Partial Modification of the Settlement Order described below. (RJN, Ex 28

12  at ¶ 5 [Adversary Proceeding Docket No. 1].)  At the time, SB Claims was fully aware of the al-

13  leged conduct, and, in fact, acquired the VIA/S3G Allowed Claim specifically with the intent of

14  seeking relief premised upon it.  Indeed, the Claim Transfer Agreement itself recites that "[a] dis-

15  pute has arisen in the Bankruptcy Cases as to the propriety of" VIA/[S3G's] acknowledgment that

16  the [VIA/S3G Allowed Claim] is not Senior Indebtedness "and as to whether such [VIA/S3G Al-

17  lowed Claim] is, or is not, 'Senior Indebtedness' under the Indenture," and that "[a] dispute also

18  has arisen as to whether the provisions in the [VIA Settlement Agreement] were adequately dis-

19  closed to the Bankruptcy Court and other parties in interest."  (RJN, Ex. 13, Claims Transfer

20  Agreement, at 3 [Docket No. 2316].)[13]

21         On May 30, 2007, SB Claims filed an adversary proceeding, Case No. 07-05082, naming

22  the Senior Noteholders as defendants (the "Adversary Proceeding").  The complaint seeks an order

23  from the Bankruptcy Court: (1) equitably subordinating certain claims of senior indebtedness based

24  upon inequitable conduct by a number of different individuals and interests in the Chapter 11 cases;

25  _____
    [13] The Senior Noteholders dispute that any part of the liability compromised pursuant to the VIA
26  Settlement Agreement is or ever was due to VIA.  The agreement that gave rise to the VIA/S3G
    Allowed Claim imposes obligations on SONICblue to make payments and render performance to
27  S3G, not to VIA.  The notion that S3G could "allocate" to VIA a claim owed to S3G and, in the
    process, provide that claim with seniority where none previously existed finds no support in the
28  Indenture or anywhere else.  The 2002 Noteholders reserve all rights in this regard.

- 15 -

Memo. of P&A's in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for
Limited Stay of Proceedings and/or to Withdraw Reference of Chapter 11 Cases – Case No. C-07-02553 RMW

1  (2) classifying the VIA/S3G Allowed Claim as Senior Indebtedness; and (3) declaratory relief in

2  connection with the same (the "Adversary Complaint"). (RJN, Ex. 28.) On July 11, 2007, the Sen-

3  ior Noteholders filed a Motion to Dismiss the Adversary Proceeding (the "Senior Noteholders' Mo-

4  tion to Dismiss"), (RJN, Ex. 29 [Adversary Proceeding Docket No. 12]), which was denied by the

5  Bankruptcy Court on October 2, 2007.  (RJN, Ex. 31 [Adversary Proceeding Docket No. 49].)

6          **8.**    **The Chapter 11 Trustee's Proposed Plan And Disclosure Statement**

7       The Chapter 11 Trustee filed its proposed plan (the "Plan"), (RJN 15 [Docket No. 2391]),

8  and disclosure statement (the "Trustee's Disclosure Statement"), (RJN, Ex. 16 [Docket No. 2392]),

9  on July 20, 2007, and, thereafter, sought an order from the Bankruptcy Court approving the Trus-

10  tee's Disclosure Statement as containing "adequate information" in accordance with Section 1125

11  of the Bankruptcy Code.  On August 21, 2007, SB Claims filed an objection to the Trustee's Dis-

12  closure Statement (the "Section 1125 Objection"), (RJN, Ex. 17 [Docket No. 2429]), and subse-

13  quently served deposition notices on various parties purportedly in connection with its Section

14  1125 Objection.

15       On August 27, 2007, the Chapter 11 Trustee filed an emergency motion seeking entry of a

16  protective order with respect to these deposition notices on the theory that the information sought

17  therein is wholly unrelated to the Section 1125 Objection ("Protective Order Motion"), (RJN, Ex.

18  18 [Docket No. 2436]), which SB Claims opposed on September 5, 2007 ("Protective Order Oppo-

19  sition"), (RJN, Ex. 20 [Docket No. 2458]).  At the hearing on the Protective Order Motion, the

20  Bankruptcy Court made it clear that it did not want the Plan to go forward before the Chapter 11

21  Trustee completed the Trustee Investigation (as described below).  (RJN, Ex. 21 at 12:8–13:15,

22  18:20-22 [Docket No. 2504].)  Accordingly, the Chapter 11 Trustee voluntarily removed the Dis-

23  closure Statement from the calendar, thereby stopping the plan process from proceeding.

24          **9.**    **The Motion To Reconstitute The Initial Creditors Committee**

25       On June 11, 2007, SB Claims filed a motion to reconstitute the Initial Creditors Committee

26  (the "Motion to Reconstitute").  (RJN, Ex. 14 [Docket No. 2341].)  In support of the Motion to Re-

27  constitute, SB Claims merely regurgitated the Findings regarding the purported conduct of the Sen-

28

- 16 -

1 | ior Noteholders and their counsel. (See RJN, Exs. 7 at 17; 11 at 3.) SB Claims, however, did not

2 | file any supporting declarations or offer any new evidence to support its allegations with respect to

3 | the actions of the Senior Noteholders or the Initial Creditors Committee.

4 |      The Bankruptcy Court relied on these very same facts in ordering the reconstitution of the

5 | Initial Creditors Committee, finding at the hearing that the Senior Noteholders had failed to dis-

6 | close their involvement in the settlement negotiations, had failed to disclose the Conflict of Interest

7 | with Pillsbury, and had failed to disclose their role within the Initial Creditors Committee. (RJN,

8 | Ex. 22 at 50:14–52:12 [Docket No. 2505].) Notwithstanding that the facts and conclusions alleged

9 | by SB Claims were subject to the instant appeal, and that *no new evidence* was introduced at the

10 | hearing despite the Senior Noteholders' counsel's request for an evidentiary hearing, (RJN, Ex. 22

11 | at 27:9-13, 33:3-7), and that the U.S. Trustee's position that there were no facts in the record to

12 | support the relief requested, (RJN, Ex. 22 at 45:19 – 46:5), the Bankruptcy Court ruled that the

13 | facts supported a ruling that the U.S. Trustee had abused her discretion in failing to reconstitute the

14 | Initial Creditors Committee, (RJN, Ex. 22 at 50:18-21). The Bankruptcy Court granted the Motion

15 | to Reconstitute on October 4, 2007 (the "Reconstitution Order"). (RJN, Ex. 23 [Docket No.

16 | 2510].) In accordance therewith, the U.S. Trustee dissolved the Initial Creditors Committee on Oc-

17 | tober 10, 2007. (RJN, Ex. 25 [Docket No. 2520].)

18 |           **10.    The Motions To Partially Vacate The Settlement Order**

19 |      On October 31, 2007, despite the ongoing Adversary Proceeding directed at the very same

20 | conduct, SB Claims filed two duplicative motions to modify or vacate in part the order approving

21 | the VIA Settlement (collectively, the "Motions for Partial Modification of the Settlement Order").

22 | The first of these motions is directed at the conduct of the Senior Noteholders ("Motion for Partial

23 | Relief from Settlement Order"). (RJN, Ex. 26 [Docket No. 2545].) The second of these motions

24 | seeks the same relief but is directed at Pillsbury's conduct, alleging that Pillsbury committed fraud

25 | on the Bankruptcy Court because of the undisclosed Conflict of Interest ("Motion to Vacate or

26 | Modify Settlement Order"). (RJN, Ex. 27 [Docket No. 2548]).[14]

27 |

28 | ---
  [14]    SB Claims filed a Supplement to Motion to Modify and/or Vacate Settlement Order, (RJN, Ex. 63 [Docket No. 2558]), in which it contends that Pillsbury also committed a fraud on the court

C.    **The Motion To Dismiss The Appeal**

As discussed above, the Senior Noteholders have appealed the decisions of the Orders. On October 11, 2007, the Chapter 11 Trustee filed his Motion that seeks to dismiss the Appeal for lack of jurisdiction. As will be shown below, the Appellate Issues do indeed provide this Court with jurisdiction.

III.    **RELIEF REQUESTED**

As long as the Bankruptcy Court and the parties in these Bankruptcy Cases operate under the assumption that the Findings are etched in stone, the underlying bankruptcy estate (and innocent creditors) will continue to bleed from a thousand cuts as a result of the various contested matters that have been filed based primarily on the Findings. In opposition to the Motion (the "Opposition"), the Senior Noteholders submit that they have standing to bring the Appeal, and that appellate review is warranted. Moreover, it is important that the Bankruptcy Court take no further action with respect to these matters while the Appellate Issues are subject to review. Hence, the Senior Noteholders combine their Opposition with a cross-motion to stay matters below that relate to the Findings pending review. Alternatively, or in conjunction with such a stay, cause exists to withdraw the reference to permit this Court to deal with all such matters in a single, judicially efficient forum. Only then can the interests of justice prevail.

As revealed in the recent status report of the Chapter 11 Trustee, the Senior Noteholders were willing to consent to a reserve above and beyond the amount of the VIA/S3G Allowed Claim to protect the protagonists if they are successful on their theories. (RJN, Ex. 24.) Indeed, the Senior Noteholders have no objection to resolving the pending litigation in a fair and prompt manner— without other creditors being held up with respect to their deserved distributions and without bleeding the estate dry with unnecessary litigation. Thus, the Senior Noteholders request that this Court: (1) deny the Motion; (2) enter an order staying the pending Motions for Partial Modification of the Settlement Order and the Adversary Proceeding related to the same (except for discovery which

because Pillsbury failed to disclose a tolling agreement it reached with former officers of the Debtor after those directors sought indemnification from Pillsbury based on a suit filed by the junior noteholders. (RJN, Ex. 63 at 5.)

- 18 -

Exhibit 1

1 | STROOCK & STROOCK & LAVAN LLP
Lewis Kruger (admitted *pro hac vice*)
2 | Kenneth Pasquale (admitted *pro hac vice*)
180 Maiden Lane
3 | New York, New York 10038
Telephone: (212) 806-5400
4 | Facsimile: (212) 806-6006

5 | STROOCK & STROOCK & LAVAN LLP
Alan Z. Yudkowsky (State Bar No. 194994)
6 | 2029 Century Park East, Suite 1800
Los Angeles, California 90067
7 | Telephone: (310) 556-5800
Facsimile: (310) 556-5959
8 |
Counsel for Portside Growth & Opportunity Fund,
9 | Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd.

10 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Van C. Durrer II (State Bar No. 226693)
11 | Glenn Walter (State Bar No. 220015)
300 South Grand Avenue, Suite 3400
12 | Los Angeles, California 90071
Telephone: (213) 687-5000
13 | Facsimile: (213) 687-5600

14 | Counsel for Citadel Equity Fund Ltd.

15 | **UNITED STATES DISTRICT COURT**

16 | **NORTHERN DISTRICT OF CALIFORNIA**

17 | **SAN JOSE DIVISION**

18 | - - - - - - - - - - - - - - - - - - - - - - - - - - x

19 | :

20 | In re : Case No. C-07-02553 RMW
:
21 | SONICBLUE INCORPORATED, a Delaware : **REQUEST FOR JUDICIAL NO-**
corporation; DIAMOND MULTIMEDIA : **TICE IN SUPPORT OF SENIOR**
22 | SYSTEMS, INC., a Delaware corporation; : **NOTEHOLDERS' OPPOSITION**
REPLAYTV, INC., a Delaware corporation; : **TO MOTION TO DISMISS AP-**
23 | and SENSORY SCIENCE CORPORATION, a : **PEAL AND CROSS-MOTIONS**
Delaware corporation, : **FOR LIMITED STAY OF PRO-**
24 | : **CEEDINGS AND/OR TO WITH-**
Debtors and Debtors in Possession. : **DRAW REFERENCE OF CHAP-**
25 | : **TER 11 CASES**
:
26 | - - - - - - - - - - - - - - - - - - - - - - - - - - x

27 |

28 |

1      Appellants Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and Citadel

2 Equity Fund Ltd. (the "Senior Noteholders"), by and through their counsel, hereby request the

3 Court to take judicial notice of these certain items designated in the Senior Noteholders' Designa-

4 tion of Items to be Included in the Record on Appeal and Statement of Issues on Appeal (the

5 "ADR") (Docket No. 3), the and certain additional items pursuant to Federal Rule of Evidence 201:

6      1.     Order Granting Debtors' Motion for Approval of Settlement of VIA and Intel Liti-

7 gation, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California,

8 Case No. 03-51775 (Docket No. 1981).

9      2.     Motion by United States Trustee for Appointment of a Chapter 11 Trustee or, in the

10 Alternative, an Examiner, In re SonicBlue Inc., United States Bankruptcy Court for the Northern

11 District of California, Case No. 03-51775 (Docket No. 2153) (ADR, Ex. 28).

12      3.     Motion to Disqualify Pillsbury Winthrop Shaw Pittman LLP, to Vacate Employ-

13 ment Order, and for Disgorgement of Attorneys' Fees, In re SonicBlue Inc., United States Bank-

14 ruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2163) (ADR,

15 Ex. 29).

16      4.     Amended Motion of United States Trustee for Appointment of Chapter 11 Trustee,

17 In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case

18 No. 03-51775 (Docket No. 2168) (ADR, Ex. 30).

19      5.     Motion to Convert Case to Chapter 7, In re SonicBlue Inc., United States Bank-

20 ruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2171) (ADR,

21 Ex. 31).

22      6.     First Amended Motion to Convert Case to Chapter 7, In re SonicBlue Inc., United

23 States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No.

24 2173) (ADR, Ex. 32).

25      7.     Memorandum Decision and Order on Motion to Appoint a Chapter 11 Trustee, Mo-

26 tion to Convert Case, and Motion to Disqualify Pillsbury Winthrop Shaw Pittman LLP and for

27 Disgorgement of Attorneys' Fees, In re SonicBlue Inc., United States Bankruptcy Court for the

28 Northern District of California, Case No. 03-51775 (Docket No. 2220) (ADR, Ex. 49).

1

8.    Motion for Clarification, or in the Alternative, Leave to File a Motion for Reconsid-
eration, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of Califor-
nia, Case No. 03-51775 (Docket No. 2231) (ADR, Ex. 51).

9.    Application for Order Approving the Appointment of Chapter 11 Trustee, In re
SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.
03-51775 (Docket No. 2239).

10.    Order Approving Appointment of Chapter 11 Trustee, In re SonicBlue Inc., United
States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No.
2242).

11.    Memorandum Decision and Order on Motion of Senior Noteholders for Clarifica-
tion, or in the Alternative, Reconsideration, In re SonicBlue Inc., United States Bankruptcy Court
for the Northern District of California, Case No. 03-51775 (Docket No. 2279) (ADR, Ex. 57).

12.    Notice of Appeal to District Court, In re SonicBlue Inc., United States Bankruptcy
Court for the Northern District of California, Case No. 03-51775 (Docket No. 2292) (ADR, Ex. 58).

13.    Notice of Transfer of Claim Other Than for Security, In re SonicBlue Inc., United
States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No.
2316).

14.    Motion for Order (1) Directing United States Trustee to Change the Membership of
Official Committee of Creditors Holding Unsecured Claims, or (2) Directing the Appointment of a
New Trade Creditor Committee, In re SonicBlue Inc., United States Bankruptcy Court for the
Northern District of California, Case No. 03-51775 (Docket No. 2341).

15.    Joint Chapter 11 Plan of Liquidation Proposed by Dennis J. Connolly, Chapter 11
Trustee, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of Califor-
nia, Case No. 03-51775 (Docket No. 2391).

16.    Disclosure Statement Describing Joint Chapter 11 Plan of Liquidation Proposed by
Dennis J. Connolly, Chapter 11 Trustee, In re SonicBlue Inc., United States Bankruptcy Court for
the Northern District of California, Case No. 03-51775 (Docket No. 2392).

17. Objection of SonicBlue Claims LLC to Disclosure Statement Describing Joint Chapter 11 plan of Liquidation Proposed by Dennis J. Connolly, Chapter 11 Trustee, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2429).

18. Emergency Motion for Protective Order in Respect of SonicBlue Claims' Notices of Deposition of Henry Kevane, John J. Todd, Albert Boro, Suzzanne Uhland, and Bruce Bennett, on September 6, 10, 11, 12 and 13, 2007, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2436).

19. Response to Motion for Order Shortening Time on Trustee's Motion for a Protective Order, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2445).

20. Opposition to Trustee's Motion for a Protective Order, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2458).

21. Transcript of Proceedings, September 5, 2007, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2504).

22. Transcript of Proceedings, September 20, 2007, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2505).

23. Order Granting Motion for Order (1) Directing United States Trustee to Change the Membership of Official Committee of Creditors Holding Unsecured Claims, or (2) Directing the Appointment of a New Trade Creditor Committee, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2510).

24. Status Report of the Chapter 11 Trustee Pursuant to 11 U.S.C. §§ 105(d), 1106(A)(3), (A)(4), and (A)(5), In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2515).

25. Notice of Dissolution of Official Committee of Creditors Holding Unsecured Claims, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2520).

3

1    26.    Motion for Partial Relief from Order Granting Debtors' Motion for Approval of Set-

2  tlement of VIA and Intel Litigation, In re SonicBlue Inc., United States Bankruptcy Court for the

3  Northern District of California, Case No. 03-51775 (Docket No. 2545).

4    27.    Motion to Vacate or Modify in Part Order Approving VIA Settlement Based Upon

5  Fraud on the Court Due to Counsel's Failure to Disclose a Material Conflict of Interest, In re

6  SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

7  03-51775 (Docket No. 2548).

8    28.    Complaint for Equitable Subordination, to Determine Proper Classification, and for

9  Declaratory Relief Regarding Senior Indebtedness Status, SonicBlue Claims LLC v. Portside

10  Growth & Opportunity Fund (In re SonicBlue Inc.), United States Bankruptcy Court for the North-

11  ern District of California, Adv. P. No. 07-05082 (Docket No. 1).

12    29.    Defendants' Motion to Dismiss, SonicBlue Claims LLC v. Portside Growth & Op-

13  portunity Fund (In re SonicBlue Inc.), United States Bankruptcy Court for the Northern District of

14  California, Adv. P. No. 07-05082 (Docket No. 12).

15    30.    Opposition to Defendants' Motion to Dismiss, SonicBlue Claims LLC v. Portside

16  Growth & Opportunity Fund (In re SonicBlue Inc.), United States Bankruptcy Court for the North-

17  ern District of California, Adv. P. No. 07-05082 (Docket No. 40).

18    31.    Order Denying Motion to Dismiss Adversary Proceeding, SonicBlue Claims LLC v.

19  Portside Growth & Opportunity Fund (In re SonicBlue Inc.), United States Bankruptcy Court for

20  the Northern District of California, Adv. P. No. 07-05082 (Docket No. 49).

21    32.    Transcript of Proceedings, September 27, 2007, SonicBlue Claims, LLC v. Portside

22  Growth & Opportunity Fund (In re SonicBlue Inc.), United States Bankruptcy Court for the North-

23  ern District of California, Adv. P. No. 07-05082 (Docket No. 51).

24    33.    Notice of Appeal, In re SonicBlue Inc., United States District Court for the Northern

25  District of California, Case No. C-07-02553 RMW (Docket No. 1).

26    34.    Chapter 11 Trustee's Motion to Dismiss Appeal, In re SonicBlue Inc., United States

27  District Court for the Northern District of California, Case No. C-07-02553 RMW (Docket No. 14).

28

35.    Opposition of Pillsbury Winthrop Shaw Pittman LLP to U.S. Trustee's Motion to Disqualify Pillsbury, Vacate Employment Order, and Require Disgorgement of Attorneys' Fees, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2182) (ADR, Ex. 37).

36.    Appointment of Committee of Unsecured Creditors, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 26) (ADR, Ex. 1).

37.    First Amended Appointment of Committee of Unsecured Creditors, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 119) (ADR, Ex. 6).

38.    Second Amended Appointment of Committee of Unsecured Creditors, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 528) (ADR, Ex. 8).

39.    Declaration of Bruce Bennett in Support of Debtors' Emergency Motion for Order (1) Establishing Notice, Sales and Bidding Procedures for Sale of Substantially All of the Debtors' Product Lines Free and Clear of All Liens, Claims, and Encumbrances; (2) Authorizing The Assumption and Assignment, or Rejection of Certain Executory Contracts and Unexpired Leases in Connection with Asset Sale, and (3) Setting Hearing on Sale of Assets on Shortened Notice, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 28) (ADR, Ex. 2).

40.    Notice of Appearances and Request for Notices and Services of Papers, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 43) (ADR, Ex. 3).

41.    Application of the Official Committee of Unsecured Creditors to Employ Levene, Neale, Bender, Rankin, & Brill L.L.P. as Bankruptcy Counsel, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 63) (ADR, Ex. 4).

42.     Declaration of Ron Bender in Support of Application of Official Committee of Unsecured Creditors to Employ Levene, Neale, Bender, Rankin & Brill L.L.P. as Bankruptcy Counsel, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 64) (ADR, Ex. 5).

43.     Stipulation Providing Relief from the Automatic Stay to Senior Noteholders, Filed 7/14/03, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 334) (ADR, Ex. 7).

44.     Stipulation Providing Relief from Automatic Stay to Senior Noteholders, Filed 10/16/03, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 545) (ADR, Ex. 10).

45.     Declaration of Ron Bender in Response of the Official Committee of Creditors Holding Secured Claims to (1) the Motion by the Office of the United States Trustee Seeking the Appointment of a Chapter 11 Trustee and (2) the Motion by SBC seeking to Convert These Chapter 11 Cases to Chapter 7, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2185) (ADR, Ex. 39).

46.     Response to Motion to Convert Chapter 11 Case to a Case Under Chapter 7, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2181) (ADR, Ex. 36).

47.     Transcript of Hearing Held on March 19, 2007, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2226) (ADR, Ex. 50).

48.     Objection of Debtor SonicBlue Inc. to Duplicate Proofs of Claim of Via Technologies, Inc. and S3 Graphics Co., Ltd. And Debtors' Second Amended Adversary Complaint for Affirmative Relief, SonicBlue Claims LLC v. Via Technologies, Inc. (In re SonicBlue Inc.), United States Bankruptcy Court for the Northern District of California, Adv. P. No. 04-05556 (Docket No. 42).

1     49.    Ex Parte Application to File Debtors' Motion for Approval of Settlement of VIA

2  and Intel Litigation Under Seal, In re SonicBlue Inc., United States Bankruptcy Court for the

3  Northern District of California, Case No. 03-51775 (Docket No. 1950).

4     50.    Order Approving Ex Parte Application to File Debtors' Motion For Approval of

5  Settlement of VIA and Intel Litigation Under Seal, In re SonicBlue Inc., United States Bankruptcy

6  Court for the Northern District of California, Case No. 03-51775 (Docket No. 1951).

7     51.    Notice of Debtors' Motion for Approval of Settlement of VIA and Intel Litigation,

8  In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case

9  No. 03-51775 (Docket No. 1955).

10     52.    Notice of Filing of Redacted Copy of Memorandum of Points and Authorities in

11  Support of Debtors' Motion for Approval of Settlement of VIA and Intel Litigation, In re

12  SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

13  03-51775 (Docket No. 2057).

14     53.    Transcript of Hearing Held on January 23, 2007 re Approval of Disclosure State-

15  ment, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California,

16  Case No. 03-51775 (Docket No. 2136) (ADR, Ex. 20).

17     54.    Disclosure Statement for Liquidating Plan of Reorganization Dated as of December

18  15, 2006, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of Cali-

19  fornia, Case No. 03-51775 (Docket No. 2047) (ADR, Ex. 11).

20     55.    Objection to Joint Disclosure Statement, In re SonicBlue Inc., United States Bank-

21  ruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2091) (ADR,

22  Ex. 13).

23     56.    Supplemental Objection to Joint Disclosure Statement Dated January 18, 2007, In re

24  SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No.

25  03-51775 (Docket No. 2115) (ADR, Ex. 17).

26     57.    Objection to Proposed Disclosure Statement Dated January 18, 200, In re SonicBlue

27  Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775

28  (Docket No. 2116) (ADR, Ex. 18).

7

58.    Submission of Preliminary Status Report and Request for Continuance of Deadline for Submission of Final Status Report and of Disclosure Statement, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2138) (ADR, Ex. 21).

59.    Transcript of Hearing Held on February 15, 2007 re a) Motion for Authority to Disclose Confidential Information to People Who are Not Parties to the VIA/Intel Confidentiality Agreement by Official Committee of Creditors Holding Unsecured Claims; b) Response by VIA Technologies, Inc., In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2176) (ADR, Ex. 34).

60.    Transcript of Hearing Held on May 4, 2007 re a) Motion for Clarification, or in the Alternative, for Leave to File a Motion for Reconsideration by Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and Citadel Equity Fund, Ltd.; b) Amended Opposition by Sonic Blue Claims, LLC, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2303) (ADR, Ex. 61).

61.    Reply to SonicBlue Claims LLC's Response to Preliminary Status Report, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2150) (ADR, Ex. 27).

62.    First Amended Disclosure Statement Describing First Amended Liquidating Plan of Reorganization, Dated as of January 18, 2007, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2103) (ADR, Ex. 14).

63.    Supplemental Document in Support  of Motion to Vacate, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2558).

64.    Stipulated Protective Order, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 529) (ADR, Ex. 9).

65.    Reply Brief in Support of Motion for Clarification, or in the Alternative, for Leave to File a Motion for Reconsideration, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2265) (ADR, Ex. 54).

8

66.  Appellants Designation of Items to be Included on the Record on Appeal and Statement of Issues on Appeal, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2308).

67.  Reply by Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd. to SonicBlue Claims LLC's Reply to Opposition to the U.S. Trustee's Motion to Disqualify Pillsbury, In re SonicBlue Inc., United States Bankruptcy Court for the Northern District of California, Case No. 03-51775 (Docket No. 2202) (ADR, Ex. 46).

Under Federal Rule of Evidence 201, a court may take judicial notice of "facts that are not subject to reasonable dispute in that they are either (1) generally known within territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Biggs v. Capital Factors, Inc., 120 F.3d 268 (9th Cir. 1997). This Court may take judicial notice of Exhibits 1-67 because they are capable of accurate and ready determination since they are from the files of this Court as well as the United States Bankruptcy Court for the Northern District of California. See Duke Energy Trading & Mktg., L.L.C. v. Davis, 267 F.3d 1042, 1048 n.3 (9th Cir. 2001) (Ninth Circuit took judicial notice of filings made in related bankruptcy proceeding). Furthermore, the exhibits "consist of court records, the accuracy of which cannot reasonably be questioned." Esiomeme v. United Airlines, Inc., 369 B.R. 531, 1-2 (N.D. Cal. 2007) (granting defendant's request for judicial notice of debtor's voluntary bankruptcy petition and bankruptcy court's orders confirming debtor's plan of reorganization).

1         Accordingly, the Senior Noteholders respectfully request that this Court take judicial notice

2    of Exhibits 1-67.[1]

3    Dated: November 20, 2007        STROOCK & STROOCK & LAVAN LLP

4

5                            By: /s/ Alan Z. Yudkowsky
                             Lewis Kruger

6                                 Attorneys for Portside Growth & Opportunity Fund,
                             Smithfield Fiduciary LLC, and

7                                 Citadel Equity Fund Ltd.

8

9              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

10                           By: /s/ Glenn Walter

11                                Glenn Walter
                             Attorneys for Citadel Equity Fund Ltd.

[1] Any party that requires a copy of the exhibits to this Request for Judicial Notice may request such copies from counsel to the Senior Noteholders, and will be provided such copies free of charge.

10

Exhibit 2

1  STROOCK & STROOCK & LAVAN LLP
   Lewis Kruger (admitted *pro hac vice*)
2  Kenneth Pasquale (admitted *pro hac vice*)
   180 Maiden Lane
3  New York, NY  10038-4982
   Telephone: (212) 806-5400
4  Facsimile:  (212) 806-6006

5  STROOCK & STROOCK & LAVAN LLP
   Alan Z. Yudkowsky (State Bar No. 194994)
6  2029 Century Park East, Suite 1800
   Los Angeles, California 90067
7  Telephone: (310) 556-5800
   Facsimile:  (310) 556-5959
8
   Counsel for Portside Growth & Opportunity Fund,
9  Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd.

10 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Van C. Durrer II (State Bar No. 226693)
11 Glenn Walter (State Bar No. 220015)
   300 South Grand Avenue, Suite 3400
12 Los Angeles, California 90071
   Telephone: (213) 687-5000
13 Facsimile:  (213) 687-5600

14 Counsel for Citadel Equity Fund Ltd.

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                   SAN JOSE DIVISION

18

19 In re                              ) Case No. C-07-02553 RMW
                                       )
20 SONICBLUE INCORPORATED, a Delaware  )
   corporation; DIAMOND MULTIMEDIA SYS-) **MEMORANDUM OF POINTS AND AU-**
21 TEMS, INC., a Delaware corporation; RE-) **THORITIES IN SUPPORT OF SENIOR**
   PLAYTV, INC., a Delaware corporation; and) **NOTEHOLDERS' OPPOSITION TO MO-**
22 SENSORY SCIENCE CORPORATION, a      ) **TION TO DISMISS APPEAL AND**
                                       ) **CROSS-MOTIONS FOR LIMITED STAY**
23 Delaware corporation,               ) **OF PROCEEDINGS AND/OR TO WITH-**
                                       ) **DRAW REFERENCE OF CHAPTER 11**
24         Debtors and Debtors in Possession. ) **CASES**
                                       )
25                                     )

26

27

28

# TABLE OF CONTENTS

Page No.

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS ......................................................................................... 4

     A.   The Senior Noteholders And The Debtor ..................................................... 4

     B.   The Bankruptcy Cases ................................................................................... 4

          1.   The Initial Creditors Committee ........................................................ 5

          2.   The VIA Litigation And The Intel Motion ........................................ 6

          3.   The VIA Settlement Negotiations ...................................................... 6

          4.   The Original Issue Discount And The 2002 Opinion Letter ........... 10

          5.   The Initial Disclosure Statement ..................................................... 11

          6.   The Orders ....................................................................................... 12

               a)   The First Opinion ................................................................ 13

               b)   The Clarification Denial Order ........................................... 13

               c)   The Notice Of Appeal ......................................................... 14

          7.   The Adversary Proceeding ............................................................... 15

          8.   The Chapter 11 Trustee's Proposed Plan And Disclosure Statement ........... 16

          9.   The Motion To Reconstitute The Initial Creditors Committee ....... 16

          10.  The Motions To Partially Vacate The Settlement Order ................. 17

     C.   The Motion To Dismiss The Appeal ............................................................ 18

III. RELIEF REQUESTED ............................................................................................ 18

IV.  DISCUSSION ........................................................................................................... 19

     A.   The Court Possesses Jurisdiction Over The Appeal .................................... 19

          1.   "Route One":  Reformation Of A Favorable Judgment ................. 20

          2.   "Route Three":  Collateral Estoppel ............................................... 22

     B.   The Court Should Stay The Motions To Vacate Or, Alternatively, Withdraw The Reference Of The Bankruptcy Cases From The Bankruptcy Court To The District Court ........................................................................................ 24

-i-

1

       1.    The Senior Noteholders Meet the Standard For Granting A Stay ...............28

2

       2.    Granting a Stay Will Not Prejudice SB Claims And Public Policy
            Favors A Stay ...............................................................................30

3

  C.    The Reference To The Bankruptcy Court Should Be Withdrawn...........................31

4

V.     CONCLUSION ........................................................................................36

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memo. of P&A's in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for
Limited Stay of Proceedings and/or to Withdraw Reference of Chapter 11 Cases – Case No. C-07-02553 RMW

**TABLE OF AUTHORITIES**

**CASES**

Am. Cmty. Servs., Inc. v. Wright Mktg., Inc. (In re Am. Cmty. Servs., Inc.),
    86 B.R. 681 (D. Utah 1988) ...................................................................................31

Bass v. Quittner, Stutman & Treister,
    381 F.2d 54 (9th Cir. 1967) ...................................................................................31

Beneficial Homeowner Serv. Corp. v. Moreau (In re Moreau),
    135 B.R. 209 (Bankr. N.D.N.Y. 1992)...................................................................27

Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human
    Resources,
    532 U.S. 598 (2001) ...............................................................................................19

Chem. Weapons Working Group (CWWG) v. Dept. of the Army,
    101 F.3d 1360 (10th Cir. 1996)........................................................................27, 28

In re City of Bridgeport,
    132 B.R. 81 (Bankr. D. Conn. 1991) .....................................................................29

Daewoo Motor Am. v. Gulf Ins. Co. (In re Daewoo Motor Am.),
    302 B.R. 308 (C.D. Cal. 2003)..........................................................................32, 35

Davis v. United States,
    667 F.2d 822 (9th Cir. 1982) .................................................................................25

Deposit Guar. Nat'l. Bank v. Roper,
    445 U.S. 326 (1980) ...............................................................................................19

Dixon v. Wallowa County,
    336 F.3d 1013 (9th Cir. 2003) ...............................................................................23

In re Dudley,
    2006 WL 862932 (N.D. Cal. 2006) ........................................................................28

In re Duro Industries,
    293 B.R. 271 (B.A.P. 1st Cir. 2003)..................................................................21, 22

Elec. Fittings Corp. v. Thomas & Betts Co.,
    307 U.S. 241 (1939) ....................................................................................20, 21, 24

Envtl. Prot. Info. Ctr., Inc. v. Pacific Lumber Co.,
    257 F.3d 1071 (9th Cir. 2001) ......................................................................19, 20, 21, 24

In re Garland,
    295 B.R. 347 (B.A.P. 9th Cir. 2003) ......................................................................21

Griggs v. Provident Consumer Discount Co.,
    459 U.S. 56 (1982) .................................................................................................25

Hill & Sandford, LLP v. Mirzai (In re Mirzai),
    236 B.R. 8 (B.A.P. 9th Cir. 1999) ...................................................................25, 26

Kennilworth Partners II LP v. Crisman,
    2001 WL 30534 (N.D. Cal. 2001) .........................................................................35

Lopez v. Heckler,
    713 F.2d 1432 (9th Cir. 1983) ...............................................................................28

In re Mader,
    100 B.R. 989 (N.D. Ill. 1989) ................................................................................29

In re Martech USA, Inc.,
    188 B.R. 847 (B.A.P 9th Cir. 1995) .......................................................................19

McClatchy Newspapers v. Cent. Valley Typographical Union No. 46,
    686 F.2d 731 (9th Cir. 1982) .................................................................................25

Mohawk Indus., Inc. v. Robinson Indus., Inc.,
    46 B.R. 464 (D. Mass. 1985) .................................................................................34

Neary v. Padilla (In re Padilla),
    222 F.3d 1184 (9th Cir. 2000) .............................................25, 27, 31, 32, 33

Newton v. Consolidated Gas Co.,
    258 U.S. 165 (1922) ..............................................................................................25

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),
    4 F.3d 1095 (2d Cir. 1993) ....................................................................................32

Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.),
    163 B.R. 41 (S.D.N.Y. 1993) ...........................................................................33, 34

Parklane Hosiery Co., Inc. v. Parklane/Atlanta Venture (In re Parklane/Atlanta
    Joint Venture),
    927 F.2d 532 (11th Cir. 1991) ...............................................................................31

Pimbo Corp. v. Castlerock Props. (In re Castlerock Props.),
    781 F.2d 159 (9th Cir. 1986) .................................................................................34

Roe v. Anderson,
    134 F.3d 1400 (9th Cir. 1998) ...............................................................................28

Deposit Guar. Nat'l Bank v. Roper,
    445 U.S. 326 (1980) ..............................................................................................20

Ruvalcaba v. City of Los Angeles,
    167 F.3d 514 (9th Cir. 1999) .................................................................................22

Sec. Farms v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers,
    124 F.3d 999 (9th Cir. 1997) ............................................................................32, 35

State of New York v. Nuclear Regulatory Comm'n,
    550 F.2d 745 (2d Cir. 1977) .................................................................................25

- iv -

Sumida v. Yumen,
    409 F.2d 654 (9th Cir. 1969), cert. denied, 405 U.S. 964 (1972)......................................25

Sw. Voter Registration Educ. Project v. Shelley,
    344 F.3d 914 (9th Cir. 2003) ................................................................................28

Taylor v. Wood,
    458 F.2d 15 (9th Cir. 1972) .................................................................................25

United States v. El-O-Pathic Pharmacy,
    192 F.2d 62 (9th Cir. 1951) .................................................................................25

United States v. Good Samaritan Church,
    29 F.3d 487 (9th Cir. 1994) .........................................................................20, 23

United States v. Rogers,
    722 F.2d 557 (9th Cir. 1983) ...............................................................................31

United States v. Thorp (In re Thorp),
    655 F.2d 997 (9th Cir. 1981) ...............................................................................31

Universal Life Church, Inc. v. United States (In the Matter of Universal Life Church, Inc.),
    191 B.R. 433 (E.D. Cal. 1995) ............................................................................29

Walker v. Lockhart,
    678 F.2d 68 (8th Cir. 1982) .................................................................................28

In re Williams,
    156 F.3d 86 (1st Cir. 1998) .................................................................................19

World Solar Corp. v. Steinbaum (In re World Solar Corp.),
    81 B.R. 603 (Bankr. S.D. Cal. 1988)...................................................................34

In re Wymer,
    5 B.R. 802 (B.A.P. 9th Cir. 1980) ..................................................................28, 29

**STATUTES**

11 U.S.C. § 502(b)(2) ...........................................................................................10

28 U.S.C. § 157(d)...........................................................................................31, 36

**MISCELLANEOUS**

Blacks Law Dictionary 11445 (7th ed. 1999) ...........................................................20

Federal Rules of Appellate Procedure
    8(a)(2)....................................................................................................27
    10 ..........................................................................................................27

- v -

Memo. of P&A's in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for
Limited Stay of Proceedings and/or to Withdraw Reference of Chapter 11 Cases – Case No. C-07-02553 RMW

Federal Rules of Bankruptcy Procedure
  157(b)(2)(A) .................................................................................34
  157(b)(2)(B) through (N) ..............................................................34
  157(b)(2)(O) .................................................................................34
  8003(c) .........................................................................................19
  8005 .........................................................................................26, 27
  9021 .............................................................................................21

Federal Rule of Civil Procedure
  58 ................................................................................................21

10 Collier on Bankruptcy ¶ 8005.10 (15th ed. Rev. 2006)..................................27

- vi -

## I.    INTRODUCTION

Appellants Portside Growth & Opportunity Fund, Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd. (collectively, the "Senior Noteholders") hereby oppose (the "Opposition") the Motion to Dismiss Appeal (the "Motion") filed by the Chapter 11 Trustee and submit this memorandum of points and authorities in support of the Opposition as well as their Cross-Motions for a Limited Stay of Proceedings and/or to Withdraw the Reference of Chapter 11 Cases (the "Cross-Motions").

Principally at issue is a March 26, 2007 opinion and order of the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") that, among other things, appointed a Chapter 11 Trustee in an effort to correct what the Bankruptcy Court termed "the complete breakdown of creditor confidence" stemming from a conflict of interest suffered by the debtors' attorneys, Pillsbury, Winthrop, Shaw Pittman LLP f/k/a Pillsbury Winthrop LLP ("Pillsbury") (the "First Opinion").  (Appellants Designation of Record ("ADR"), Ex. 49 at 1 [Docket No. 2220];[1] Request for Judicial Notice ("RJN"), Ex. 7 at 1.)  At the time the Chapter 11 Trustee was appointed, it was suggested that this conflict of interest caused Pillsbury to assist in brokering a settlement agreement containing a term that was favorable to the Senior Noteholders.

In essence then, the "breakdown" arose in connection with the manner in which the settlement was negotiated, proposed, and ultimately approved in the Bankruptcy Court.  Importantly, however, no party-in-interest has claimed that the settlement was not in the best interests of the estates.  The only party claiming to be harmed by the settlement is a party who had the benefit of full disclosure and representation by counsel in connection with the allegedly offending settlement provision, and the allegedly offending settlement provision did not cost the debtors' estates anything as it was in the nature of an agreed clarification of a pre-petition agreement.

Also noteworthy is the uncontroverted circumstances of the conflict of interest:  it stemmed from a dispute between Pillsbury and the Senior Noteholders that arose more than three months *after* the allegedly offending settlement provision was proposed (and approximately one year after

---

[1]    Unless otherwise indicated, all docket entries referenced herein are on the record in the Chapter 11 cases pending before the Bankruptcy Court, Case No. 03-51775.

-1-

1   the provision was agreed to in principle) and almost three months *after* it was agreed to by the party

2   allegedly harmed by it. And the actual conflict of interest touched only *one* of the debtors' two law

3   firms that advised the debtors in connection with the settlement. No one has suggested, nor can

4   they, that the second law firm ever suffered under any conflict of interest.

5        No party-in-interest – not the Senior Noteholders, the non-debtor party to the settlement, the

6   debtors (through either law firm), or the initial official committee of unsecured creditors – affirma-

7   tively disclosed the allegedly offending settlement provision, which only affected the Senior Note-

8   holders and the non-debtor party to the settlement, in a settlement that everyone still agrees was in

9   the best interests of the estate. While the allegedly offending settlement provision may not have

10   been specifically highlighted or called to the Bankruptcy Court's attention, *it was included in pa-*

11   *pers submitted to the Bankruptcy Court.* With perfect hindsight, of course, it would be foolish to

12   dispute that this settlement term should have been affirmatively disclosed. The fact that so many

13   parties failed to make an affirmative disclosure, however, strongly suggests that the failure was in-

14   advertent, and the fact that the settlement remains undisputedly a "good deal" confirms that no

15   harm was done.

16        Against this backdrop (but without consideration of any of the foregoing undisputed cir-

17   cumstances), the Bankruptcy Court appointed a Chapter 11 Trustee to investigate the facts and cir-

18   cumstances surrounding the settlement, which appointment the Senior Noteholders did not oppose.

19   In its opinion, the Bankruptcy Court conceded that the Senior Noteholders' motive in connection

20   with the settlement was "not known." (RJN, Ex. 7 at 17.) Yet in the same opinion, the Bankruptcy

21   Court purported to find facts regarding the alleged, but unsubstantiated, behavior of the Senior

22   Noteholders' counsel that demonstrated improper motives. (Id.) And in the later, related clarifica-

23   tion opinion, the Bankruptcy Court erroneously concluded that there was an "appearance of con-

24   cealment" and that the participation by the largest creditors in the single most important settlement

25   to the estates was "unusual" (the "Clarification Denial Order" and, collectively with the First Opin-

26   ion, the "Orders"). (ADR, Ex. 57 at 3-4 [Docket No. 2279]; RJN, Ex. 11 at 3-4.)

27

28

Memo. of P&A's in Support of Senior Noteholders' Opposition to Motion to Dismiss Appeal and Cross-Motions for
Limited Stay of Proceedings and/or to Withdraw Reference of Chapter 11 Cases – Case No. C-07-02553 RMW

1        Because these, and other, findings in the Orders were unnecessary to the motions before the

2    Bankruptcy Court, clearly erroneous, and unsupported by the record, the Senior Noteholders filed

3    this appeal (the "Appeal").  The Chapter 11 Trustee has moved to dismiss the Appeal on the

4    grounds that this Court does not possess jurisdiction to review factual findings contained in the Or-

5    ders where the Senior Noteholders have not challenged the results reached in the Orders.  (Mot. at

6    2, 6-7.)  Although the Chapter 11 Trustee correctly states the general rule that only a party "ag-

7    grieved" by a judgment or order may appeal therefrom, the Ninth Circuit has recognized prudential

8    exceptions to the "prevailing party" rule, and the Senior Noteholders satisfy those exceptions.

9    Therefore, the Senior Noteholders are deemed "aggrieved" by the Orders and have standing to ap-

10   peal.  Specifically, because the Orders contain discussions of issues that are immaterial to the mo-

11   tions that were before the Bankruptcy Court, the Senior Noteholders may seek reformation of the

12   Orders.  Furthermore, for the reasons set forth herein, the Orders may be appealed because they

13   could potentially serve as the basis for collateral estoppel in subsequent litigation.

14       Following entry of the Orders and the filing of this Appeal, the Bankruptcy Court again re-

15   lied upon the disputed findings of "fact," without any evidentiary hearing, to reconstitute the credi-

16   tors committee, and these same findings have recently spawned two separate motions for relief

17   from the order approving the settlement.  Because the Bankruptcy Court has more than once relied

18   on certain factual findings in granting relief, however, the Senior Noteholders also file concurrently

19   herewith the Cross-Motions.

20       The Senior Noteholders have no opposition to a full and fair investigation of their conduct

21   in these bankruptcy cases; however, to date, the Senior Noteholders have had no opportunity to be

22   heard.  The Senior Noteholders file the accompanying Cross-Motions, therefore, to ensure they

23   have the opportunity to present a full and accurate picture regarding their conduct and, perhaps

24   more importantly, to avoid the waste of estate resources in the underlying Chapter 11 cases.

25

26

27

28

II.    **STATEMENT OF FACTS**

    A.    **The Senior Noteholders And The Debtor**

In April 2002, in the face of mounting economic pressure caused by faltering finances, SONICblue, Incorporated (the "Debtor" or "SONICblue"),[2] negotiated the issuance of senior secured subordinated convertible debentures (the "Senior Notes") with the Senior Noteholders in the amount of $75 million, pursuant to an indenture dated as of April 22, 2002 (the "Indenture").[3] (ADR, Exs. 20 at 32:3-11 [Docket No. 2136], 37, Declaration of Ana N. Damonte ("Damonte Declaration") at ¶¶ 2-9 [Docket No. 2182]; RJN, Exs. 53 at 32:3-11, 35 at ¶¶ 2-9.)  Significantly for this case, one provision of the Indenture provided that the Senior Notes were subordinate to certain other obligations ("Senior Indebtedness" and the "Senior Indebtedness Provision"), including "[a]ll indebtedness of [SONICblue] due and owing to Via Technologies, Inc. [("VIA")] in an aggregate principal amount not to exceed $15,000,000 or the equivalent thereof in any other currency or composite currency."[4]  (ADR, Ex. 37, Indenture, at Section 1.1 (g) [Docket No. 2182]; RJN, Ex. 35, Indenture, at Section 1.1(g).)

    B.    **The Bankruptcy Cases**

Just ten months after it issued the Senior Notes, due to the continued deterioration of the Debtors' businesses, it became necessary for the Debtors to file for bankruptcy protection.  On March 21, 2003 (the "Petition Date"), therefore, each of the Debtors commenced a Chapter 11 case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court. These Chapter 11 cases were procedurally consolidated for administrative purposes, and these petitions were assigned to United States Bankruptcy Judge Marilyn Morgan in case numbers 03-51775-035178-MM (the "Bankruptcy Cases").  That same day, the Office of the United States Trustee (the "U.S. Trustee") appointed the Senior Note-

---

[2]    The Debtor, a Delaware corporation formerly known as S3 Inc., is a consumer electronics company. Debtors ReplayTV, Inc., Sensory Science Corp., and Diamond Multimedia Systems Inc. are wholly-owned subsidiaries of SONICblue. Collectively, these entities are the debtors (the "Debtors") herein.

[3]    Pillsbury was the Debtor's counsel during these negotiations. It had been the Debtor's general corporate and litigation counsel for many years.

[4]    In 2001, VIA and the Debtor formed a joint venture—S3 Graphics Co., Ltd. ("S3G").

holders to the initial Official Committee of Unsecured Creditors (the "Initial Creditors Committee"). (ADR, Ex. 1 [Docket No. 26]; RJN, Ex. 36.)  Each of the Senior Noteholders filed a proof of claim (the "Indenture Claims") related to the Senior Notes.

Pillsbury again was retained by the Debtors, and Hennigan, Bennett & Dorman LLP ("HBD") represented the Senior Noteholders in connection with the Bankruptcy Cases.  Levene, Neale, Bender, Rankin & Brill LLP ("LNBRB") was appointed as counsel for the Initial Creditors Committee.

### 1.     The Initial Creditors Committee

In addition to being appointed to the Initial Creditors Committee, the U.S. Trustee included the Senior Noteholders in all subsequent amended appointments to the Initial Creditors Committee. (ADR, Exs. 6 [Docket No. 119], 8 [Docket No. 528]; RJN. Exs. 36, 37, 38.)  At first, all eight members of the Initial Creditors Committee participated actively, (ADR, Ex. 39, Declaration of Ron Bender ("Bender Declaration") at ¶ 24 [Docket No. 2185]; RJN, Ex. 45 at ¶ 24), but after 2003, only the Senior Noteholders, Matsushita Kotobuki Electronics Sales of America LLC, and Matsushita Kotbuki Electronics Industries were truly involved, (RJN, Exs. 45 at ¶¶ 24-27, 53 at 5:15-6:6).

From the time of their appointment through the filing of this appeal, the Senior Noteholders were openly active members of the Initial Creditors Committee.  The other key actors in the Bankruptcy Cases – including, for example, the Debtors, Pillsbury, VIA, and Ron Bender of LNBRB – were well aware that the Senior Noteholders were members of the Initial Creditors Committee and that Bruce Bennett of HBD represented the Senior Noteholders as such—*not the Initial Creditors Committee.* Every document contained in the record supports this view, and that they functioned as separate and distinct parties.  (See, e.g., ADR, Exs. 2 at ¶ 4 [Docket No. 28]; 3 at 1-2 [Docket No. 43]; 4 at ¶¶ 11-12 [Docket No. 63]; 5 at ¶¶ 7-8 [Docket No. 64]; 7 at 1 [Docket No. 334]; 10 at 1 [Docket No. 545]; RJN, Ex. 35, Declaration of Albert J. Boro ("Boro Decl.") at ¶¶ 10, 14 ("Following that, we spoke with Mr. Bennett, counsel for the Senior Noteholders …."), 17-18, 25; RJN, Exs. 45, Bender Decl. at ¶ 4, 40 at 1-2, 41 at ¶¶ 11-12, 42 at ¶¶ 7-8, 43 at 1, 44 at 1, 45 at ¶¶ 13 n.1,

27.)[5]  What is more, as made clear by the Senior Noteholders, "[n]o issues put before the [Initial]
Creditors' Committee have been determined by the Senior Noteholders alone." (ADR, Ex. 36 at 2
[Docket No. 2181]; RJN, Ex. 46 at 2.)  Finally, the Senior Noteholders never participated in an Ini-
tial Creditors Committee vote "relating to an issue in which the senior noteholders had a distinct
interest …." [ADR, Ex. 50 at 37:17-20 [Docket No. 2226]; RJN, Ex. 47 at 37:17-20.)

### 2.    The VIA Litigation And The Intel Motion

Since its formation, VIA and the Debtor have had a contentious relationship regarding
S3G—their joint venture.  On June 6, 2003, Intel Corporation ("Intel") filed a motion seeking, *inter
alia*, to terminate a patent licensing agreement with the Debtor related to its use by S3G (the "Intel
Motion").  Since Pillsbury had previously represented Intel, the Debtor hired O'Melveny & Meyers
LLP ("OMM") as independent, special litigation counsel respecting the Intel Motion.  (RJN, Ex.
35, Boro Decl. at ¶ 4.)  Then, on July 17, 2003, VIA and S3G filed duplicate proofs of claim for
$70 million in the Bankruptcy Cases based on an alleged breach of their joint venture agreement,
involving the patent licensing agreement that was the subject of the Intel Motion.  (RJN, Ex. 35,
Boro Decl. at ¶ 2.)  The Debtor objected to these claims, and subsequently, on December 21, 2004,
the Debtor filed an adversary complaint against VIA and S3G (the "VIA Litigation").  (Appellee's
Designation of Record ("APDR"), Ex. 74 [Docket No. 42]; RJN, Ex. 48.)

### 3.    The VIA Settlement Negotiations

According to the Bankruptcy Court, the resolution of the Intel Motion and the settlement of
the duplicate claims were the major impediments towards bringing the Bankruptcy Cases to a con-

---

[5]    For example, on October 9, 2003, the parties involved in the VIA Litigation and Intel Motion
described below entered into a Stipulated Protective Order (the "Protective Order") that was signed
by the Bankruptcy Court on October 17, 2003.  It is clear from the face of the Protective Order that
these parties viewed the Senior Noteholders and the Initial Creditors Committee as separate and
distinct entities to be covered by the Protective Order.  Significantly, the attorneys from LNBRB
and HBD were separately given designations to view documents under the Protective Order.
(ADR, Ex. 9 at 3-5[Docket No. 529]; RJN, Ex. 64 at 3-5.)  Finally, the Protective Order was signed
by counsel for the Senior Noteholders as "Attorneys for the Senior Debtholders," and the Protec-
tive Order was separately executed by counsel for the Initial Creditors Committee.  (RJN, Ex. 64 at
12.)

1   clusion.[6]  (RJN, Ex. 7 at 17 ("During the past year and a half, SONICblue's litigation against VIA

2   and [S3G] has been the main roadblock to the proposal of a plan and the conclusion of this case.").)

3   Settlement negotiations between the parties began in August 2005 (the "VIA Settlement Negotia-

4   tions").  HBD, and by extension Mr. Bennett, were involved in the VIA Settlement Negotiations

5   solely as counsel for the Senior Noteholders.  (RJN, Ex. 35, Boro Decl. at ¶¶ 10, 14, 17-18, 25.)

6   There is nothing in the record to indicate that any party involved in the VIA Settlement Negotia-

7   tions somehow thought otherwise.  (See, e.g., RJN, Ex. 35, Boro Decl. at ¶ 10.)  Although an

8   agreement was reached in principle in September 2005, it was not until late September 2006 that

9   the VIA Settlement Negotiations produced a finalized agreement (the "VIA Settlement Agree-

10  ment").  (APDR, Exs. 63 [Docket No. 1950], 64 [Docket No. 1951], 65 [Docket No. 1955], 67

11  [Docket No. 2057]; RJN, Exs. 49-52.)

12          The first settlement meeting occurred on August 11, 2005, and was attended by representa-

13  tives of VIA and the Debtor.  (RJN, Ex. 35, Boro Decl. at ¶ 9.)  There, VIA contended that its al-

14  lowed claim should be $42.5 million.  The Debtor countered that an allowed claim of $6 million

15  might be acceptable, but that the Initial Creditors Committee needed to approve before a formal

16  offer could be made.  (RJN, Ex. 35, Boro Decl. at ¶ 9.)  After the attorneys for the Initial Creditors

17  Committee consulted with Mr. Bennett on behalf of the Senior Noteholders, they authorized the

18  Debtor to counter with a settlement offer of $6 million.  (RJN, Ex. 35, Boro Decl. at ¶ 10.)  Pills-

19  bury believed that the consent of the Senior Noteholders to the terms of any settlement was essen-

20  tial to court approval.[7]  (RJN, Ex. 35, Boro Decl. at ¶ 11.)  And Mr. Bennett confirmed on August

21  30, 2005 that the Senior Noteholders would support a $6 million counteroffer.  (RJN, Ex. 35, Boro

22  Decl. at ¶ 10.)

23

24

25  [6]   According to the Bankruptcy Court, "[t]his litigation was also significant because termination
26  of [the intellectual property rights] would arguably trigger the liquidated damages provision of the
    joint venture agreement [between VIA and the Debtor]."  (RJN, Ex. 7 at 7.)

27  [7]   At both the August and September 2005 settlement meetings, the parties discussed that VIA's
    claim would be given the same priority as other general unsecured creditors.  (RJN, Ex. 35, Boro
28  Decl. at ¶ 15.)

1    Following this meeting, Pillsbury participated in settlement discussions with the Debtor's

2  independent, special litigation counsel, OMM, LNBRB for the Initial Creditors Committee, and

3  Mr. Bennett on behalf of the Senior Noteholders. (RJN, Ex. 35, Boro Decl. at ¶ 11.) Based on

4  those discussions, Pillsbury concluded that a global settlement that included Intel was necessary

5  and that a settlement amount of less than $25 million would be acceptable to the Initial Creditors

6  Committee. (RJN, Ex. 35, Boro Decl. at ¶ 11.) On September 12, 2005, counsel for VIA sent

7  Pillsbury a draft settlement term sheet proposing that VIA be allowed a general unsecured claim in

8  the amount of $27.5 million. (RJN, Ex. 35, Boro Decl. at ¶ 12.)

9    In a subsequent settlement meeting held on September 15, 2005,[8] VIA and S3G reduced

10  their settlement demand to $19 million. (RJN, Ex. 35, Boro Decl. at ¶ 14.) Following that meet-

11  ing, Pillsbury spoke with Mr. Bennett who indicated that his clients would only support an allowed

12  claim of $10 million. (RJN, Ex. 35, Boro Decl. at ¶ 14.) After consulting with the Debtor, it au-

13  thorized a $10 million counteroffer. (RJN, Ex. 35, Boro Decl. at ¶ 14.) Later that day, counsel for

14  the various parties tentatively agreed to a settlement amount of $12.5 million subject to client and

15  creditor approval. (RJN, Ex. 35, Boro Decl. at ¶ 14.) On September 20, 2005, Mr. Bennett con-

16  firmed the Senior Noteholders' agreement to a $12.5 million allowed claim; provided that the set-

17  tlement included, *inter alia*, a provision that the VIA/S3G allowed claim (the "VIA/S3G Allowed

18  Claim") be neither senior nor junior to other general unsecured claims. (RJN, Ex. 35, Boro Decl. at

19  ¶ 17.) And the Senior Noteholders did so, because, under the transactional facts fully known to

20  everyone, the VIA/S3G Allowed Claim would not constitute Senior Indebtedness. (See RJN, Exs.

21  35, Boro Decl. at ¶¶ 15-17, 45 at ¶ 40.)

22    In a conference call that same day with VIA and S3G, the Debtor accepted the settlement

23  terms so long as the VIA/S3G Allowed Claim be neither senior nor junior to other general unse-

24  cured claims. (RJN, Ex. 35, Boro Decl. at ¶ 17.) VIA and S3G did not object to this language and

25

26  [8]  At the time of the September 15, 2005 settlement meeting, Mr. Boro was aware of the Senior Indebtedness Provision contained in the Senior Debenture, (RJN, Ex. 35, Boro Decl. at ¶ 15), and
27  he came to the conclusion that the Senior Indebtedness Provision contemplated a loan that had never occurred, (RJN, Ex. 35, Boro Decl. at ¶ 17). This provision was not discussed at the Sep-
28  tember 15, 2005 meeting. (RJN, Ex. 35, Boro Decl. at ¶ 15.)

- 8 -

1    "wanted to include language that Defendants could decide how to allocate the allowed claim

2    among Defendants." (RJN, Ex. 35, Boro Decl. at ¶ 17.)  On September 22, 2005, the "neither sen-

3    ior nor junior" language again was discussed by Pillsbury with counsel for VIA and S3G.  (RJN,

4    Ex. 35, Boro Decl. at ¶ 17.)  Counsel for VIA and S3G "posed questions about subordination of the

5    claims of the Senior Noteholders and other creditors, and expressed concern that other creditors not

6    unduly benefit at their clients' expense, but they nevertheless agreed that their [allowed] claim was

7    neither senior nor junior to other general unsecured claims." (RJN, Ex. 35, Boro Decl. at ¶ 17.)

8          On September 26, 2005, counsel for the Debtor and VIA finalized a draft of the proposed

9    settlement term sheet, which included the following provision:

10                 Claimants shall jointly hold a single, allowed general unsecured
                    claim in the Chapter 11 case of SONICblue Inc., which claim shall be
11                 afforded the benefits and priority of SONICblue's other allowed gen-
                    eral unsecured claims and shall be neither senior nor junior to any
12                 other allowed general unsecured claim, in the amount of $12.5 mil-
13                 lion.

14   (RJN, Ex. 35, Boro Decl. at ¶ 18.)

15         Mr. Boro sent the proposed term sheet to Mr. Bennett on behalf of the Senior Noteholders

16   and to LNBRB on behalf of the Initial Creditors Committee on September 27, 2005.  (RJN, Ex. 35,

17   Boro Decl. at ¶ 18.)  In a conference call held later that day, the Initial Creditors Committee ap-

18   proved the settlement terms.  (RJN, Ex. 35, Boro Decl. at ¶ 18.)  Apparently, finalizing the settle-

19   ment between the Debtor, VIA, and S3G was delayed and made complicated by the difficulty in

20   reaching a resolution with Intel.  (RJN, Ex. 35, Boro Decl. at ¶ 19.)  Thus, the initial draft of a set-

21   tlement agreement was not prepared until January 25, 2006, when OMM circulated a draft that con-

22   tained a provision dealing with the VIA/S3G Allowed Claim that read substantially the same as the

23   one in the September 26, 2005 term sheet.  (RJN, Ex. 35, Boro Decl. at ¶ 19.)

24         In April or early May 2006, Pillsbury proposed that the settlement agreement include lan-

25   guage specifically stating that the VIA/S3G Allowed Claim was not "Senior Indebtedness" as set

26   forth in the Senior Notes.  (RJN, Ex. 35, Boro Decl. at ¶ 20.)  Then, on May 12, 2006, OMM circu-

27   lated a revised draft with the following language added:

28
                                                    - 9 -

> Claimants and the Debtor agree that the Allowed Claim is not, and shall not be treated as, "Senior Indebtedness" under the terms of the Debtor's Indenture, dated as of April 22, 2002, for the 7-¾ Secured Senior Subordinated Convertible Debentures due 2005.

(the "Waiver Provision") (RJN, Ex. 35, Boro Decl. at ¶ 17.)   At a June 1, 2006 settlement meeting, the parties discussed proposed language waiving any claim that the settlement amount constituted Senior Indebtedness under the Senior Notes. (RJN, Ex. 35, Boro Decl. at ¶ 23.)  Stating that it was aware of the Senior Indebtedness Provision and understood that it related to a loan that never occurred, VIA agreed to that limitation. (RJN, Ex. 35, Boro Decl. at ¶ 23.)  Substantially the same language was included in a later revised draft circulated on June 16, 2006 and in the final VIA Settlement Agreement. (RJN, Ex. 35, Boro Decl. at ¶ 24.)

Therefore, pursuant to the VIA Settlement Agreement, VIA and S3G agreed, *inter alia*, to settle in exchange for a general unsecured allowed claim of $12.5 million that was not "Senior Indebtedness" as described in the Senior Notes. (RJN Ex. 35, Settlement Agreement, at § 3.)  On October 10, 2006, the Debtor filed a motion to approve the VIA Settlement Agreement, which was granted on October 31, 2006. (APDR, Ex. 66 [Docket No. 1981]; RJN, Exs. 49-52.)

### 4.    The Original Issue Discount And The 2002 Opinion Letter

As counsel for the Debtor during the negotiations for the Senior Notes, Pillsbury issued an opinion letter to the Senior Noteholders regarding the enforceability of the Senior Notes (the "2002 Opinion Letter"). (RJN, Ex. 35, Freeman Decl. at ¶ 5.)  Later, in its capacity as counsel for the Debtor in the Bankruptcy Cases, Pillsbury was involved in evaluating possible objections to claims—including those of the Senior Noteholders. (RJN, Ex. 35, Declaration of William B. Freeman ("Freeman Declaration") at ¶ 6.)  On July 20, 2006, Pillsbury informed the Senior Noteholders that their claim would be challenged as it was based on unamortized original issue discount and thus subject to disallowance under 11 U.S.C. § 502(b)(2) (the "OID Issue"). (RJN, Ex. 35, Freeman Decl. at ¶¶ 6-7.)

Mr. Bennett contacted Pillsbury, on behalf of the Senior Noteholders, on August 24, 2006 to discuss the OID Issue and the 2002 Opinion Letter. (RJN, Ex. 35, Freeman Decl. at ¶ 7.)  Thereafter, on September 5, 2006, HBD sent a letter to Pillsbury that demanded indemnification from

- 10 -

1    Pillsbury for any possible loss due to the OID Issue (the "Indemnification Demand") based on the

2    2002 Opinion Letter.[9]  (RJN, Ex. 35, Declaration of Craig A Barbarosh ("Barbarosh Decl.") at ¶

3    14.)  According to the Senior Noteholders, the 2002 Opinion Letter clearly took the position that

4    the Senior Notes would not be affected or limited by applicable bankruptcy laws.  (RJN, Ex. 35,

5    Barbarosh Decl. at ¶ 11.)  Pillsbury, in turn, maintained that the 2002 Opinion Letter did nothing of

6    the sort.  (RJN, Ex. 35, Barbarosh Decl. at ¶ 11.)

7          In response to the Indemnification Demand, Pillsbury immediately notified Mr. Bender that

8    Pillsbury had a conflict.  (RJN, Ex. 35, Barbarosh Decl. at ¶ 13.)  Pillsbury then transferred the re-

9    sponsibility for handling the Senior Noteholders' claims to Mr. Bender and the Initial Creditors

10    Committee.  (ADR, Ex. 37, Freeman Decl. at ¶¶ 8-11.)  Regardless of the 2002 Opinion Letter's

11    meaning, Pillsbury's failure to properly disclose the conflict caused by the 2002 Opinion Letter

12    (the "Conflict of Interest") led to its eventual disqualification and the cloud that has been cast over

13    these Bankruptcy Cases.  (RJN, Ex. 7 at 14-16.)

14          **5.**    **The Initial Disclosure Statement**

15          On December 15, 2006, the Debtor and the Initial Creditors Committee jointly filed a dis-

16    closure statement.  (ADR, Ex. 11 [Docket No. 2047]; RJN, Ex. 54.)  On, January 11, 2007, River-

17    side Contracting, LLC and Riverside Claims, LLC (collectively, "Riverside") filed objections to

18    that disclosure statement.  (ADR, Exs. 13 [Docket No. 2091], 17 [Docket No. 2115]; RJN, Exs. 55-

19    56.)  While most of Riverside's objections were addressed by the filing of a First Amended Disclo-

20    sure Statement (the "Amended Disclosure Statement"), (ADR, Ex. 14 [Docket No. 2103]; RJN, Ex.

21    62), on January 17, 2007, Riverside filed a supplemental objection (collectively with the original

22    objections, the "Riverside Objections") and continued to object to what it described as "inadequate

23    information relating to the [VIA Settlement Agreement] ....  Without such information, creditors

24    cannot make an intelligent and informed decision as to whether to accept or reject the Plan."  (RJN,

25

26

27    [9]  Thus, the language in the VIA Settlement that related to the Waiver Provision was a part of the VIA Settlement Agreement several months before the OID Issue arose and the Senior Noteholders

28    sent Pillsbury the Indemnification Demand.

1  Ex. 56 at 1-2.)  On January 22, 2003, Argo Partners, Inc. ("Argo"),[10] a claims trader, also filed ob-

2  jections based on what it portrayed as inadequate disclosure related to the VIA Settlement Agree-

3  ment.  (ADR, Ex. 18 at 2-3 [Docket No. 2116]; RJN, Ex. 57.)

4          On January 23, 2007, the Bankruptcy Court held a hearing to approve the Amended Disclo-

5  sure Statement.  (RJN, Ex. 53.)  At this hearing, Mr. Bender addressed (among other issues) the

6  constitution of the Initial Creditors Committee and that, as far as he was aware, VIA had acknowl-

7  edged that the VIA/S3G Allowed Claim was not Senior Indebtedness under the Senior Notes.[11]

8  (ADR, Ex. 20 at 5:3-6:24, 24:2-24:6; RJN, Ex. 53 at 5:3-6:24, 24:2-24:6.)  Significantly, Mr.

9  Bender consistently has maintained that the Initial Creditors Committee was very pleased with the

10  VIA Settlement Agreement, (see, e.g., RJN, Exs. 45 at ¶ 45, 53 at 11:14-18), and that everyone

11  recognized that the VIA Settlement Agreement was a very good deal, (see, e.g., RJN, Ex. 53 at

12  11:14-18).  Based in large part on the issues raised in the Riverside Objections and by Argo, the

13  Bankruptcy Court directed Mr. Bender to investigate the circumstances surrounding the VIA Set-

14  tlement Negotiations and to file a status report, (RJN, Ex. 53 at 47:1-50:15), which he did on Feb-

15  ruary 14, 2007, (ADR, Ex. 21 [Docket No. 2138]; RJN Ex. 58).  At a February 15, 2007 hearing,

16  where Mr. Bennett appeared on behalf of the Senior Noteholders, the Bankruptcy Court directed

17  Mr. Bender to stop investigating the matter further.  (ADR, Ex. 34 at 12:14-19 [Docket No. 2176];

18  RJN, Ex. 59 at 12:14-19).

19          **6.    The Orders**

20          Various motions were filed in response to the questions raised by Pillsbury's failure to af-

21  firmatively disclose its conflict with the Senior Noteholders, the Waiver Provision, and the VIA

22  Settlement Negotiations.  The U.S. Trustee filed a Motion To Appoint Chapter 11 Trustee, Or In

23  The Alternative Motion To Appoint Examiner (the "Trustee Motion") (ADR, Exs. 28 [Docket No.

24

25  [10]  Argo owns a 50% interest in SonicBlue Claims, LLC ("SB Claims")—also a claims trader. (ADR, Ex. 27 at 2 [Docket No. 2150]; RJN, Ex. 61.)  SB Claims did not exist at the time Argo filed

26  its objections.  SB Claims, however, now is the successor-in-interest to certain rights of VIA and S3G under the VIA Settlement Agreement.  (RJN, Ex. 45 at ¶ 5.)

27  [11]  Mr. Bender was informed repeatedly by VIA that it knowingly waived any claim to Senior In-

28  debtedness when it entered into the VIA Settlement Agreement.  (RJN, Ex. 45 at ¶¶ 35, 45-47.)

1  2153], 30 [Docket No. 2168]; RJN, Exs. 2, 4), and a Motion To Disqualify Pillsbury Winthrop

2  Shaw Pittman LLP, To Vacate Employment Order, And For Disgorgement Of Attorneys' Fees (the

3  "Disqualification Motion"). (ADR, Ex. 29 [Docket No. 2163]; RJN, Ex. 3.) Not to be left out, SB

4  Claims filed a Motion To Convert Case To Chapter 7 (the "Chapter 7 Motion"). (ADR, Exs. 31

5  [Docket No. 2171], 32 [Docket No. 2173]; RJN, Exs. 5-6.)

6                     a)    The First Opinion

7       The Bankruptcy Court held a hearing on March 19, 2007 to address these motions. (RJN,

8  Ex. 47.) Mr. Bennett again appeared on behalf of the Senior Noteholders. (RJN, Ex. 47 at 6:19-

9  21.) On March 26, 2007, the Bankruptcy Court issued the First Opinion, which appointed a Chap-

10  ter 11 Trustee, declined to convert the case from Chapter 11 to Chapter 7, and disqualified Pills-

11  bury. (RJN, Ex. 7.)

12                     b)    The Clarification Denial Order

13      On April 4, 2007, the Senior Noteholders filed a Motion For Clarification, Or In The Alter-

14  native, Leave To File A Motion For Reconsideration (the "Clarification Motion"). (ADR, Ex. 51

15  [Docket No. 2231]; RJN, Ex. 8.) The Clarification Motion sought "clarification or reconsideration

16  of certain statements in the [First Opinion], which could be misconstrued as suggesting that the

17  Court made certain factual findings or conclusions unnecessary to the decision of the motions be-

18  fore the Court and unsupported by the record." (RJN, Ex. 8 at 1.) Specifically, the Senior Note-

19  holders were concerned that the following statements in the First Opinion could be misconstrued:

20          1. The rights to use Intel's graphics patents were so important that
           the joint venture agreement included a liquidated damages clause at
21         article 5.6 entitling the joint venture and VIA each to damages of up
           to $70 million if the joint venture were ever enjoined from using the
22         Intel cross-license; and

23          2. Because the bondholders appear to have used their position on the
           committee to insert themselves into the settlement negotiations with-
24         out revealing a hidden agenda, they may have breached their fiduci-
           ary duty to the unsecured creditor body. Whether their motive was
25         simply to save litigation costs for the estate by avoiding future litiga-
           tion over the priority of VIA's claim, or, instead, to assure a larger re-
26         turn on their individual investments is not known. In fact, as Bennett
           noted, he had never personally appeared in court until March 19,
27         2007. During the four years of this case, he has operated in the shad-

28                                    - 13 -

ows and, until January 23, 2007, it was not generally known to this court or the creditor body that the three senior bondholders were serving on the Committee (collectively, the "Findings").

(RJN, Ex. 8 at 1.)

After a hearing respecting the Clarification Motion on May 4, 2007, (ADR, Ex. 61 [Docket No. 2303]; RJN, Ex. 60), the Bankruptcy Court immediately issued its Clarification Denial Order denying the Clarification Motion. (ADR, Ex. 57 [Docket No. 2279]; RJN, Ex. 11.) The Bankruptcy Court began the Clarification Denial Order by stating: "Let there be no doubt that the words and findings of my [First Opinion] were carefully selected to respond to the issues then before the court ...." (RJN, Ex. 11 at 1.) The Bankruptcy Court then provided additional facts to support its characterization of the Senior Noteholders and Mr. Bennett in the First Opinion. Although Mr. Bennett was under no duty to volunteer information to Mr. Bender and Mr. Bender had described him as extremely cooperative during his investigation,[12] the Bankruptcy Court nonetheless found that "it does not appear that Bennett ever volunteered relevant information despite the ongoing investigation and Bender's active efforts to pursue answers." (RJN, Ex. 11 at 3.) The Bankruptcy Court concluded by stating that "[t]he appearance of concealment by the senior noteholders and Bennett was one of the grounds for the appointment of a trustee." (RJN, Ex. 11 at 4.)

Since his appointment, the Chapter 11 Trustee has undertaken a comprehensive investigation into: (1) the conduct of professionals and other fiduciaries in the Bankruptcy Proceedings prior to his appointment, including Pillsbury and LNBRB; and (2) the circumstances leading up to and surrounding the VIA Settlement Agreement (the "Trustee Investigation").

### c)   The Notice Of Appeal

In response to the Orders, the Senior Noteholders filed their Notice of Appeal on May 11, 2007. (ADR, Ex. 58 [Docket No. 2292]; RJN, Ex. 33.) The Senior Noteholders appeal the Orders

---

[12]  According to Mr. Bender, Mr. Bennett did everything he was asked in connection with Mr. Bender's investigation. For example, Mr. Bender described Mr. Bennett as having "been extremely cooperative from the outset." (ADR, Ex. 21, Declaration of Ron Bender in Support of His Submission of Preliminary Status Report ("Bender Status Report Decl.") at ¶ 25 [ Docket No. 2138]; RJN, Ex. 58 at ¶ 25.) Mr. Bender also stated that Mr. Bennett had made a complete document production and was scheduled to be deposed before Mr. Bender continued it to allow for a ruling on confidential documents. (RJN, Ex. 58 at ¶ 25.)

1    on the basis that the Bankruptcy Court: (1) mistakenly determined that VIA has a claim against the

2    Debtor related to the loss of the use of the patent licensing agreement by S3G and the liquidated

3    damages remedy for that loss (the "VIA Claim Issue"); and (2) mistakenly made conclusions re-

4    garding the role of the Senior Noteholders and their counsel during the VIA Settlement Negotia-

5    tions (the "Senior Noteholders Issue," collectively with the VIA Claim Issue, the "Appellate Is-

6    sues"). (RJN, Ex. 66 at 7 [Docket No. 2308].)

7              7.    **The Adversary Proceeding**

8         SB Claims acquired the VIA/S3G Allowed Claim on April 27, 2007. This was, however,

9    *after* all of the alleged improper conduct by Pillsbury and the Senior Noteholders had occurred.

10   But it is this alleged conduct that forms the basis for the relief requested in the Adversary Proceed-

11   ing and the Motions for Partial Modification of the Settlement Order described below. (RJN, Ex 28

12   at ¶ 5 [Adversary Proceeding Docket No. 1].)  At the time, SB Claims was fully aware of the al-

13   leged conduct, and, in fact, acquired the VIA/S3G Allowed Claim specifically with the intent of

14   seeking relief premised upon it. Indeed, the Claim Transfer Agreement itself recites that "[a] dis-

15   pute has arisen in the Bankruptcy Cases as to the propriety of" VIA/[S3G's] acknowledgment that

16   the [VIA/S3G Allowed Claim] is not Senior Indebtedness "and as to whether such [VIA/S3G Al-

17   lowed Claim] is, or is not, 'Senior Indebtedness' under the Indenture," and that "[a] dispute also

18   has arisen as to whether the provisions in the [VIA Settlement Agreement] were adequately dis-

19   closed to the Bankruptcy Court and other parties in interest." (RJN, Ex. 13, Claims Transfer

20   Agreement, at 3 [Docket No. 2316].)[13]

21        On May 30, 2007, SB Claims filed an adversary proceeding, Case No. 07-05082, naming

22   the Senior Noteholders as defendants (the "Adversary Proceeding"). The complaint seeks an order

23   from the Bankruptcy Court: (1) equitably subordinating certain claims of senior indebtedness based

24   upon inequitable conduct by a number of different individuals and interests in the Chapter 11 cases;

25   [13] The Senior Noteholders dispute that any part of the liability compromised pursuant to the VIA
26   Settlement Agreement is or ever was due to VIA.  The agreement that gave rise to the VIA/S3G
     Allowed Claim imposes obligations on SONICblue to make payments and render performance to
27   S3G, not to VIA.  The notion that S3G could "allocate" to VIA a claim owed to S3G and, in the
     process, provide that claim with seniority where none previously existed finds no support in the
28   Indenture or anywhere else.  The 2002 Noteholders reserve all rights in this regard.

1  (2) classifying the VIA/S3G Allowed Claim as Senior Indebtedness; and (3) declaratory relief in

2  connection with the same (the "Adversary Complaint"). (RJN, Ex. 28.)  On July 11, 2007, the Sen-

3  ior Noteholders filed a Motion to Dismiss the Adversary Proceeding (the "Senior Noteholders' Mo-

4  tion to Dismiss"), (RJN, Ex. 29 [Adversary Proceeding Docket No. 12]), which was denied by the

5  Bankruptcy Court on October 2, 2007.  (RJN, Ex. 31 [Adversary Proceeding Docket No. 49].)

6           **8.    The Chapter 11 Trustee's Proposed Plan And Disclosure Statement**

7           The Chapter 11 Trustee filed its proposed plan (the "Plan"), (RJN 15 [Docket No. 2391]),

8  and disclosure statement (the "Trustee's Disclosure Statement"), (RJN, Ex. 16 [Docket No. 2392]),

9  on July 20, 2007, and, thereafter, sought an order from the Bankruptcy Court approving the Trus-

10  tee's Disclosure Statement as containing "adequate information" in accordance with Section 1125

11  of the Bankruptcy Code.  On August 21, 2007, SB Claims filed an objection to the Trustee's Dis-

12  closure Statement (the "Section 1125 Objection"), (RJN, Ex. 17 [Docket No. 2429]), and subse-

13  quently served deposition notices on various parties purportedly in connection with its Section

14  1125 Objection.

15           On August 27, 2007, the Chapter 11 Trustee filed an emergency motion seeking entry of a

16  protective order with respect to these deposition notices on the theory that the information sought

17  therein is wholly unrelated to the Section 1125 Objection ("Protective Order Motion"), (RJN, Ex.

18  18 [Docket No. 2436]), which SB Claims opposed on September 5, 2007 ("Protective Order Oppo-

19  sition"), (RJN, Ex. 20 [Docket No. 2458]).  At the hearing on the Protective Order Motion, the

20  Bankruptcy Court made it clear that it did not want the Plan to go forward before the Chapter 11

21  Trustee completed the Trustee Investigation (as described below).  (RJN, Ex. 21 at 12:8–13:15,

22  18:20-22 [Docket No. 2504].)  Accordingly, the Chapter 11 Trustee voluntarily removed the Dis-

23  closure Statement from the calendar, thereby stopping the plan process from proceeding.

24           **9.    The Motion To Reconstitute The Initial Creditors Committee**

25           On June 11, 2007, SB Claims filed a motion to reconstitute the Initial Creditors Committee

26  (the "Motion to Reconstitute"). (RJN, Ex. 14 [Docket No. 2341].)  In support of the Motion to Re-

27  constitute, SB Claims merely regurgitated the Findings regarding the purported conduct of the Sen-

28

1  ior Noteholders and their counsel. (See RJN, Exs. 7 at 17; 11 at 3.) SB Claims, however, did not

2  file any supporting declarations or offer any new evidence to support its allegations with respect to

3  the actions of the Senior Noteholders or the Initial Creditors Committee.

4         The Bankruptcy Court relied on these very same facts in ordering the reconstitution of the

5  Initial Creditors Committee, finding at the hearing that the Senior Noteholders had failed to dis-

6  close their involvement in the settlement negotiations, had failed to disclose the Conflict of Interest

7  with Pillsbury, and had failed to disclose their role within the Initial Creditors Committee. (RJN,

8  Ex. 22 at 50:14–52:12 [Docket No. 2505].) Notwithstanding that the facts and conclusions alleged

9  by SB Claims were subject to the instant appeal, and that *no new evidence* was introduced at the

10 hearing despite the Senior Noteholders' counsel's request for an evidentiary hearing, (RJN, Ex. 22

11 at 27:9-13, 33:3-7), and that the U.S. Trustee's position that there were no facts in the record to

12 support the relief requested, (RJN, Ex. 22 at 45:19 – 46:5), the Bankruptcy Court ruled that the

13 facts supported a ruling that the U.S. Trustee had abused her discretion in failing to reconstitute the

14 Initial Creditors Committee, (RJN, Ex. 22 at 50:18-21). The Bankruptcy Court granted the Motion

15 to Reconstitute on October 4, 2007 (the "Reconstitution Order"). (RJN, Ex. 23 [Docket No.

16 2510].) In accordance therewith, the U.S. Trustee dissolved the Initial Creditors Committee on Oc-

17 tober 10, 2007. (RJN, Ex. 25 [Docket No. 2520].)

18         **10.    The Motions To Partially Vacate The Settlement Order**

19         On October 31, 2007, despite the ongoing Adversary Proceeding directed at the very same

20 conduct, SB Claims filed two duplicative motions to modify or vacate in part the order approving

21 the VIA Settlement (collectively, the "Motions for Partial Modification of the Settlement Order").

22 The first of these motions is directed at the conduct of the Senior Noteholders ("Motion for Partial

23 Relief from Settlement Order"). (RJN, Ex. 26 [Docket No. 2545].) The second of these motions

24 seeks the same relief but is directed at Pillsbury's conduct, alleging that Pillsbury committed fraud

25 on the Bankruptcy Court because of the undisclosed Conflict of Interest ("Motion to Vacate or

26 Modify Settlement Order"). (RJN, Ex. 27 [Docket No. 2548]).[14]

27

28  [14]    SB Claims filed a Supplement to Motion to Modify and/or Vacate Settlement Order, (RJN,
    Ex. 63 [Docket No. 2558]), in which it contends that Pillsbury also committed a fraud on the court

### C.     The Motion To Dismiss The Appeal

As discussed above, the Senior Noteholders have appealed the decisions of the Orders. On October 11, 2007, the Chapter 11 Trustee filed his Motion that seeks to dismiss the Appeal for lack of jurisdiction. As will be shown below, the Appellate Issues do indeed provide this Court with jurisdiction.

## III.     RELIEF REQUESTED

As long as the Bankruptcy Court and the parties in these Bankruptcy Cases operate under the assumption that the Findings are etched in stone, the underlying bankruptcy estate (and innocent creditors) will continue to bleed from a thousand cuts as a result of the various contested matters that have been filed based primarily on the Findings. In opposition to the Motion (the "Opposition"), the Senior Noteholders submit that they have standing to bring the Appeal, and that appellate review is warranted. Moreover, it is important that the Bankruptcy Court take no further action with respect to these matters while the Appellate Issues are subject to review. Hence, the Senior Noteholders combine their Opposition with a cross-motion to stay matters below that relate to the Findings pending review. Alternatively, or in conjunction with such a stay, cause exists to withdraw the reference to permit this Court to deal with all such matters in a single, judicially efficient forum. Only then can the interests of justice prevail.

As revealed in the recent status report of the Chapter 11 Trustee, the Senior Noteholders were willing to consent to a reserve above and beyond the amount of the VIA/S3G Allowed Claim to protect the protagonists if they are successful on their theories. (RJN, Ex. 24.) Indeed, the Senior Noteholders have no objection to resolving the pending litigation in a fair and prompt manner— without other creditors being held up with respect to their deserved distributions and without bleeding the estate dry with unnecessary litigation. Thus, the Senior Noteholders request that this Court: (1) deny the Motion; (2) enter an order staying the pending Motions for Partial Modification of the Settlement Order and the Adversary Proceeding related to the same (except for discovery which

---

because Pillsbury failed to disclose a tolling agreement it reached with former officers of the Debtor after those directors sought indemnification from Pillsbury based on a suit filed by the junior noteholders. (RJN, Ex. 63 at 5.)

1    STROOCK & STROOCK & LAVAN LLP
     LEWIS KRUGER (admitted *pro hac vice*)
2    KENNETH PASQUALE (admitted *pro hac vice*)
     180 Maiden Lane
3    New York, New York 10038
     Telephone: 212-806-5400
4    Facsimile: 212-806-6006

5
     STROOCK & STROOCK & LAVAN LLP
6    ALAN Z. YUDKOWSKY (State Bar No. 194994)
7    2029 Century Park East, 16th Floor
     Los Angeles, California 90067-3086
8    Telephone: 310-556-5800
     Facsimile: 310-556-5959
9
     *Counsel for Portside Growth & Opportunity Fund,*
10   *Smithfield Fiduciary LLC, and Citadel Equity Fund Ltd.*

11
     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12   VAN C. DURRER II (State Bar No. 226693)
     GLENN WALTER (State Bar No. 220015)
13   300 South Grand Avenue
     Los Angeles, California 90071
14   Telephone: 213-687-5000
     Facsimile: 213-687-5600
15   *Counsel for Citadel Equity Fund Ltd.*

16            **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17                        **SAN JOSE DIVISION**

18   | In re | Case Nos. 03-51775 through 03-51778 |
19   |       |                                     |
     | SONICBLUE INCORPORATED, | Chapter 11 Cases |
20   | a Delaware corporation, DIAMOND | |
     | MULTIMEDIA SYSTEMS, INC., | Jointly Administered |
21   | a Delaware corporation, REPLAYTV, | |
22   | INC., a Delaware corporation, and | **CERTIFICATE OF SERVICE** |
     | SENSORY SCIENCE CORPORATION, | |
23   | a Delaware corporation, | |
24   |       Debtors. | |

25

26

27

28

1

2

## CERTIFICATE OF SERVICE BY MAIL

3        I, Patricia Bloom, hereby declare:

4        I am over the age of 18 years and not a party to or interested in the within entitled cause. I

5  am an employee of Stroock & Stroock & Lavan LLP and my business address is 2029 Century

   Park East, 18th Floor, Los Angeles, California 90067-3086.  I am familiar with the business

6  practice at my place of business for collection and processing of correspondence for mailing with

   the United States Postal Service.  Correspondence so collected and processed is deposited with the

7  United States Postal Service that same day in the ordinary course of business.

8        On November 20, 2007, at my place of business as listed above, the following documents

9  **NOTICE OF MOTION AND MOTION TO WITHDRAW REFERENCE OF**
   **CHAPTER 11 CASES**

10

11 were placed for deposit in the United States Postal Service, for collection and mailing on that date,
   following ordinary business practices, in a sealed envelope(s), with postage fully prepaid,

12 addressed as shown on the attached service list.

13       I declare that I am employed in an office of a member of the bar of this Court, at whose
   direction the within service was made.  I declare under penalty of perjury under the law of the

14 United States of America that the foregoing is true and correct.

15       EXECUTED on November 20, 2007, at Los Angeles, California.

16

17                                         /s/ Patricia Bloom
                                           Patricia Bloom

18

19

20

21

22

23

24

25

26

27

28

-1-

1

## SERVICE LIST

2

3
Diana Chan
A-Max Technology Company, Ltd.
4
12/F Remington Centre
23 Hung To Road
5
Kwun Tong, Kowloon
6
Hong Kong

7
Lillian Stenfeldt, Esq.
Gray Cary
8
1755 Embarcadero Road
Palo Alto, CA 94303
9

William Sweeney
10
Maxtor Corporation
389 Disc Drive
11
Longmont, CO 80503-9364

12

13
Peter Fishman, Esq.
Houlihan Lokey Howard & Zukin Capital
14
One Sansome Street
CitiCorp Center
15
San Francisco, CA 94101

16
Toshiyuki Miyake
17
Matsushita Kotobuki Electronics Sales of
America, LLC
18
700 No. Hayden Island Drive
Suite 200
19
Portland, OR 97217

20
Jim Coggburn
Maxtor Corporation
21
500 McCarthy Blvd.
Milpitas, CA 95035
22

23
Jim Andrews
Andrews Air Corporation
24
50 Tanforan Avenue
South San Francisco, CA 94080
25

Jennifer Gendel
26
Bingham McCutchen LLP
3 Embarcadero Center
27
San Francisco, CA 94111-4067

28

Oscar Garza, Esq.
Gibson Dunn & Crutcher LLP
4 Park Plaza
Suite 1400
Irvine, CA 92614

Richard Zermani
Hale & Dorr LLP
60 State Street
Boston, MA 02109

Bruce MacIntyre, Esq.
Dax J. Hansen, Esq.
Perkins Coie LLP
1201 Third Avenue
Suite 4800
Seattle, WA 98101

Alan Cormier, Esq.
Michael F. Zullas, Esq.
Manufacturers' Service Ltd.
9 Northeastern Blvd
Salem, NH 03079-1952

Koichi Kishimoto
Matsushita Kotobuki Electronics
Industries, Ltd.
247 Fukutake, Saijo
Ehime, Japan
793-8510

Emmett Stanton
Fenwick & West
801 California Street
Mountain View, CA 94041-2014

Laurence Pulgram and Market Porter
Fenwick & West – San Francisco
275 Battery Street
San Francisco, CA 94111

| | |
|---|---|
| 1 | Ron M. Oliner, Esq.<br>Buchalter Nemer Fields & Younger<br>333 Market Street<br>25th Floor<br>San Francisco, CA 94105 | Dilip Ghelani<br>Fidelity Investments<br>2300 Litton Lane<br>Client Services ECM<br>Hebron, KY 41048 |

1  Ron M. Oliner, Esq.                    Dilip Ghelani
   Buchalter Nemer Fields & Younger       Fidelity Investments
2  333 Market Street                      2300 Litton Lane
   25th Floor                             Client Services ECM
3  San Francisco, CA 94105                Hebron, KY 41048

4  D. Bruce Prout, Esq.                   Norman E. MacKay, Esq.
   Christie, Parker & Hale, L.L.P.        Germino, MacKay, Runte & McDonald
5  350 West Colorado Boulevard            2500 El Camino Real, Suite 210
   Suite 350                              Palo Alto, CA 94306-1791
6  Pasadena, CA 91105

7  Citicapital Commercial Leasing         Desmond J. Cussen, Esq.
8  Corporation                            Gibson Dunn & Crutcher, LLP
   c/o Roger L. Efremsky, Esq.            One Montgomery Street
9  Law Offices of Efremsky & Nagel        Suite 3100
   5776 Stoneridge Mall Road, Suite 360   San Francisco, CA 94104
10 Pleasanton, CA 94588

11 Roku LLC                               George Belfield
   Cooley Godward LLP                     Greenberg Traurig LLP
12 One Maritime Plaza                     2450 Colorado Avenue
   20th Floor                             Suite 400 East
13 San Francisco, CA 94111-3580           Santa Monica, CA 90404

14 Krishna Rangarajan                     Rick B. Antonoff, Esq.
   CRT Capital Group LLC                  Clifford E. Neimeth, Esq.
15 262 Harbar Drive                       Greenberg Traurig, LLP
   Stamford, CT 06902                     200 Park Avenue
16                                        MetLife Bldg.
17                                        New York, NY 10166

18 Equity Security Holder Pro Se          Suzanne M. Smith, Esq.
   Adam P. Friedman                       Heller Ehrman White & McAuliffe LLP
19 c/o. Wolff & Samson PC                 333 Bush Street
   One Boland Drive                       San Francisco, CA 94104-2878
20 West Orange, NJ 07052

21 Lori Robertson and David Aelvoet
   Linebarger Goggan Blair & Sampson
22 P.O. Box 17428
   1949 South IH 35 (7841)
23 Austin, TX 78760

24 Legal Department                       Rodger M. Landau
   IBM Corporation                        McDermott, Will & Emery
25 Mail Stop 119                          2049 Century Park East,
   One Northcastle Drive                  34th Floor
26 Armonk, NY 10504                       Los Angeles, CA 90067

27 R. Robin Lai                           John David Wilburn, Esq.
28 IT&T Technologies, Inc.                McGuirewoods LLP
   P.O. Box 3670                          1750 Tysons Boulevard, Suite 1800
   Fullerton, CA 92834                    McLean, VA 22102

1  Robert J. Brantman, Esq.                     Dion W. Hayes, Esq.
   Katten Muchin Zavis Rosenman                 Joseph S. Sheerin, Esq.
2  525 West Monroe Street                       McGuireWoods LLP
   Suite 1600                                   One James Center
3  Chicago, IL 60661                            901 East Cary Street
                                                Richmond, VA 23219
4

5  Korea Export Insurance Corporation           Richard Chow
   c/o Lee, Hong, Degerman, Kang &              Millennium Technology Ventures
6  Schmadeka                                    350 Park Avenue
   Attn: Mark S. Faulkner                       10th Floor
7  660 S. Figueroa Street, Ste. 2300            New York, NY 10022
   Los Angeles, CA 90017-3473
8

9  Peter Gilhuly, Esq.                          William O. LaMotte, III
   Latham & Watkins                             Gregory W. Werkheiser
   633 West Fifth Street                        Patricia R. Uhlenbrock
10 Suite 4000                                   Morris, Nichols, Arsht & Tunnell
   Los Angeles, CA 90071                        1201 N. Market Street
11                                              P.O. Box 1347
                                                Wilmington, DE 19899-1347
12

13 William Webb Farrer, Esq.                    Luther Orton, Esq.
   Law Offices of Richard H. Cross, Jr. LLC     Snyder Miller & Orton LLP
14 300 Montgomery Street                        111 Sutter Street, Suite 1950
   Suite 600                                    San Francisco, CA 94104
15 San Francisco, CA 94104

16 Christopher Alliotts, Esq.                   Randall C. Bupp
   IT&T Limited, IT&T Technologies, Inc.        Plastiras & Terrizzi, a Professional
17 and Arise Solutions                          Corporation
   Murray & Murray                              24 Professional Center Parkway
18 19330 Steven Creek Boulevard                 Suite 150
   Cupertino, CA 95014                          San Rafael, CA 94903
19

20 Tapio Arimo and Per-Ake Stahl                Scott P. Cooper, Esq.
   Nokia Inc.                                   Mark Zohn, Esq.
   545 Wisman Road                              Mary Rose, Esq.
21 Mountain View, CA 94043-2172                 Proskauer Rose LLP
                                                2049 Century Park East, Suite 3200
22                                              Los Angeles, CA 90067

23 Michael Burke, Esq.                          Josiah Rotenberg
   Nutter McClennen & Fish LLP                  Quadrangle Group LLC
24 World Trade Center                           375 Park Avenue, 14th Floor
   155 Seaport Blvd.                            New York, NY 10152
25 Boston, MA 02210

26
   Suzzanne Uhland, Esq.                        Karen Tillman, Esq.
27 Alan Rader, Esq.                             RadioShack Corporation
   Austin K. Barron, Esq.                       300 RadioShack Circle, #CF4-122
28 O'Melveny & Myers LLP                        Fort Worth, TX 76102-1964
   400 South Hope Street
   Los Angeles, CA 90071

1    Carm Adimando                          Mark W. Wasserman, Esq.
     Opta Systems                           Reed Smith
2    47 Cherry Gate Lane                    3110 Fairview Park Drive
     Trumbull, CT 06611                     Suite 1400
3                                           Falls Church, VA 22042

4    Richard M. Pachulski, Esq.             James C. Yenzer
     Pachulski Stang Ziehl Young & Jones    Revenue Management
5    10100 Santa Monica Blvd.               One Unversity Plaza, Suite 518
     Suite 1100                             Hackensack, NJ 07601
6    Los Angeles, CA 90067

7    Bruce G. MacIntyre, Esq.               Richard H. Cross, Jr., Esq.
8    Perkins Coie LLP                       Law Offices of Richard H. Cross, Jr. LLC
     1201 Third Avenue                      1201 North Orange Street
9    40th Floor                             Suite 610
     Seattle, WA 98101                      Wilmington, DE 19801
10

11   Riverside Claims                       Kenneth S. Ziman, Esq.
     P.O. Box 626                           Robert H. Trust, Esq.
     Planetarium Station                    Simpson Thatcher & Bartlett
12   New York, NY 10024                     425 Lexington Avenue
                                            New York, NY 10017
13

14   Robert D. Hansen, Esq.                 Jeffery E. Ostrow, Esq.
     99 Almaden Boulevard                   Simpson Thatcher & Bartlett
15   8th Floor                              3330 Hillview Avenue
     San Jose, CA 95113                     Palo Alto, CA 94304
16

17   Anthony Wood                           Gratian Joseph
     Roku LLC                               Scott Emmons
     399 Sherman Avenue                     State Street
18   Suite 12                               725 South Figueroa
     Palo Alto, CA 94306                    Suite 3100
19                                          Los Angeles, CA 90017

20   Ira P. Rothken, Esq.                   Preferred Packaging
     Rothken Law Firm                       c/o Don C. Fletcher, Esq.
21   3 Hamilton Lndg., Suite 224            The Cavanagh Law Firm
     Novato, CA 94949-8248                  1850 N. Central Avenue
22                                          Suite 2400
                                            Phoenix, AZ 85004
23

24   Seolwan Koo                            Vernon Back, Esq.
     Samsung Electronics Co., Ltd.          Thomson Inc.
25   21st Fl., Samsung Main                 10330 North Meridian Street
     Bldg. 250, 2-Ka, Taepyung-Ro,          Indianapolis, IN 46290
26   Chung-Ku
     Seoul Korea 100-742
27

28   Eleazer Klein, Esq.                    Robert H. Heath
     Schulte Roth & Zabel LLP               Thomson Inc.
     919 Third Avenue                       3332 Washington Street
     New York, NY 10022                     San Francisco, CA 94118

1   Lillian G. Stenfeldt, Esq.                    Philip P. Bogosian
    Sedgwick, Detert, Moran & Arnold LLP          Thought Communications, Inc.
2   One Market Plaza, 8th Floor                   20 Great Oaks Boulevard, Suite 130
    San Francisco, CA 94105-1420                  San Jose, CA 95119
3

4   Daniel Clivner, Esq.                          Anne E. Kearns, Esq.
    Simpson Thatcher & Bartlett                   Krieg, Keller, Sloan, Reilley & Roman LLP
5   10 Universal City Plaza                       114 Sansome Street
    Suite 1850                                    San Francisco,CA 94104-3898
6   Los Angeles, CA 91608

7
    Stuart West                                   Jason McFall
8   TiVo                                          Simpson Thatcher & Bartlett
    2160 Gold Street                              10 Universal City Plaza, Suite 1850
9   P.O. Box 2160                                 Los Angeles, CA 91608
    Alviso, CA 95002
10
    Sarah D. Moyed                                Michael S. Lurey, Esq.
11  Bankruptcy Counsel                            Latham & Watkins LLP
    Pacific Regional Office                       Sears Tower, Suite 5800
12  11th Floor                                    233 South Wacker Drive
    5670 Wilshire Boulevard                       Chicago, Illinois 60606
13  Los Angeles, CA 90036

14  Mr. Sherman Wan                               ReGen Capital
    Via Technologies, Inc.                        Attn: Holly Rogers
15  940 Mission Court                             2109 Broadway, Suite 206
    Fremont, CA 94539-8202                        New York, NY 10023
16

17  Richard Adler                                 Robert P. Feldman, Esq.
    Winston & Strawn                              Colleen Bal, Esq.
18  101 California Street                         Wilson Sonsini Goodrich & Rosati
    San Francisco, CA 984114                      650 Page Mill Road
19                                                Palo Alto, CA 94304-1050

20  William Webb Farrer, Esq.                     Henry C. Kevane, Esq.
    Law Offices of Richard H. Cross, Jr. LLC      Pachulski, Stang, Ziehl, Young, et al.
21  300 Montgomery Street                         150 California Street, 15th Floor
    Suite 600                                     San Francisco, CA 94111-4554
22  San Francisco, CA 94104

23  Robert Rotstein, Rodger M. Lanu               Doug Wolfe
    McDermott Will & Emery                        General Counsel
24  34th Floor                                    ASM Capital
    2049 Century Park East                        7600 Jericho Turnpike, Suite 302
25  Los Angeles, CA 90067                         Woodbury, NY 11797

26  Cooper, Zohn & Rose                           Primeshares
27  Proskauer Rose LLP                            60 Madison Avenue, 2nd Floor
    Suite 2300                                    New York, NY 10011-1600
28  2049 Century Park East
    Los Angeles, CA 90067-3125

1  Lance Maerov, Senior Vice President          David R. Weinstein
   Corporate Development, WPP Group             Weinstein, Weiss & Ordubegian LLP
2  USA, Inc,                                    1925 Century Park East, Suite 1150
   125 Park Avenue, 4th Floor                   Los Angeles, CA 90067-2712
3  New York, NY 10017

4
   Maria Ann Milano, Esq.                       Luther Orton, Esq.
5  Riddell Williams P.S.                        Snyder, Miller & Orton LLP
   1001 4th Avenue Plaza, Suite 4500            111 Sutter Street, Suite 1950
6  Seattle, WA 98154                            San Francisco, CA 94104

7  Frank Pepler, Esq.                           Anne E. Kearns, Esq.
   Pepler Mastromonaco LLP                      Krieg, Keller, Sloan, Reilley & Roman LLP
8  100 First Street, 25th Floor                 114 Sansome Street
   San Francisco, CA 94105                      San Francisco, CA 94104-3898
9
   NL Properties, Inc.                          William McGrane
10 c/o Dennis D. Miller, Esq.                   Bernard S. Greenfield
   Stein & Lubin LLP                            McGrane Greenfield LLP
11 600 Montgomery Street, 14th Floor            One Ferry Building, Suite 220
   San Francisco, CA 94111                      San Francisco, CA 94111
12
   Frank A. Merola
13 K. John Shaffer
   Gina Najolia
14 Stutman, Treister, & Glatt PC
   1901 Avenue of the Stars, 12th Floor
15 Los Angeles, CA 90067

16
   Bankers/Softech/Mid-States                   Kevin Zeidan
17 4201 Lake Cook Road                          Vice President
   Northbrook, IL 60062                         Comerica Bank - California
18                                              One Market Plaza
                                                Spear Street Tower, Suite 1830
19                                              San Francisco, CA 94105

20 C3 Sales, Inc.                               Jonathan Neil & Associates, Inc.
   10914 Roaring Brook Lane                     c/o Glasberg, Pollak & Associates
21 Houston, TX 77024                            425 California Street, Suite 825
                                                San Francisco, CA 94104
22
   Lucent Technologies, Inc.                    Manufacturers' Services Limited
23 Attn: Suzana Pereira                         300 Baker Avenue
   600 Mountain Avenue, Room 7F513              Concord, MA 01742
24 Murray Hill, NJ 07974

25
   Congress Financial Corporation (Western)
26 251 So. Lake Avenue
   Suite 900
27 Pasadena, CA 91101

28

Employment Development Department
1500 - 11th Street
P.O. Box 826880
Sacramento, CA 95814

Multiple Zones International, Inc.
520 So. El Camino Real
Suite 318
San Mateo, CA 94402

Finova Capital Corporation
1060 First Avenue
King of Prussia, PA 19406

Newcourt Communications Finance Corp.
2 Gatehall Drive
Parsippany, NJ 07054

Flextronics Internation USA, Inc.
2090 Fortune Drive
San Jose, CA 95131

Newcourt Financial Technology
1830 West Airfield Drive
DFW Airport, TX 75261

Hewlett-Packard Company Financing
20 Perimeter Summit Blvd.
Atlanta, GA 30319

Pacific NW Properties Ltd Partnership
9665 S.W. Allen Blvd, Suite 115
Beaverton, OR 97005

Sanwa Bank of California
220 Almaden Blvd.
San Jose, CA 95113

Silicon Valley Bank
3000 Lakeside Drive
Santa Clara, CA 95054

Telogy, Inc.
3885 Bohannan Drive
Menlo Park, CA 94025

Arlana Stewart
10841 North Woodrow Avenue
Fresno, CA 93730-5159

Falcon Advisors, Inc.
c/o Craig B. Florence, Esq.
Gardere, Wynne & Sewell LLP
1601 Elm Street, Suite 3000
Dallas, TX 75201

AT&T Capital Corporation
Instrument & Data Services
1830 W. Airfield Drive
DFW Airport, TX 75261

Florida Department of Revenue
Bankruptcy Department
Doyle E. Carlton Bldg.
501 S. Calhoun Street, Room 343
Tallahassee, FL 32399-0100

Citicorp Vendor Finance, Inc.
c/o Corporation Service Company Which Will Do
Business in California as CSC – Lawyers
Incorporating Service
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA 95833

Jonathan Neil & Associates, Inc.
c/o Glassberg, Pollak & Associates
44 Montgomery Street, Suite 1660
San Francisco, CA 94104

Citicorp Vendor Finance, Inc.
700 East Gate Drive, Suite 400
Park Ridge, NJ 08054

Suzana Pereira
Lucent Technologies Inc.
600 Mountain Avenue
Room 7F513
Murray Hill
Berkeley Heights, NJ 07974

| | | |
|---|---|---|
| 1 | County of Santa Clara<br>Tax Collector | Quail Creek Bank NA<br>12202 North May Street |
| 2 | 70 West Hedding Street<br>San Jose, CA 95110 | Oklahoma City, OK 73120<br>(Also served by 1st Class mail-P.O. Box |
| 3 | | 20160)<br>Oklahoma City, OK 73156 |
| 4 | | |
| 5 | County Tax Assessor, GA<br>Clerk of the Court | Raymond Leasing Corporation<br>Corporate Headquarters |
| 6 | Gwinnett Superior Court, Real Estate Division<br>75 Langley Drive | 8-20 South Canal Street<br>Greene, NY 13778 |
| 7 | Lawrenceville, GA 30045 | |
| 8 | County Tax Assessor, GA<br>Gwinnett Assessor's Office | Red Lion Hotels Inc.<br>755 Crossover Lane |
| 9 | 75 Langley Drive<br>Lawrenceville, GA 30045 | Memphis, TN 38117 |
| 10 | | |
| 11 | Digital Commerce Corporation<br>c/o Alan Krenek | |
| 12 | Agent for Service of Process<br>575 Herndon Parkway, Suite 300 | |
| 13 | Herndon, VA 20170 | |
| 14 | Richardson Independent School District<br>400 South Greenville Avenue | S3 Incorporated<br>1801 Mission College Blvd. |
| 15 | Richardson, TX 75081<br>Attn: Mia Martin, General Counsel | Santa Clara, CA 95054 |
| 16 | | |
| 17 | Richardson Independent School District<br>c/o Randall L. Shepherd, Esq. | Joseph Kincaid<br>Swanson, Martin & Bell |
| 18 | Law Offices of Robert E. Luna P.C.<br>4411 N. Central Expressway | Counsel for Raymond Leading<br>1 IBM Plaza |
| 19 | Dallas, TX 75205 | Suite 28900<br>330 N. Wabash |
| 20 | | Chicago, IL 60611 |
| 21 | Round Rock Independent School District<br>c/o Brian E. Brown, Esq. | West Virginia State Tax Department<br>1001 Lee Street |
| 22 | Linebarger, Goggan, Blair, Sampson & Pena LLP<br>1949 South I.H. 35 | Charleston, West Virginia 25321 |
| 23 | P.O. Box 17428<br>Austin, TX 78760 | |
| 24 | Round Rock Independent School District | |
| 25 | c/o Nelda Wells Spears<br>Assessor and Collector of Taxes | |
| 26 | County of Travis<br>1010 Lovaca | |
| 27 | Austin, TX 78701 | |
| 28 | | |

1     Bank One                                 USB PaineWebber

| Line | Left Column | Right Column |
|---|---|---|
| 1 | Bank One | USB PaineWebber |
| 2 | Attn: Eugene O'Connor | Attn: Legal Department |
| 2 | Legal Dept. – AZ1-1314 | One North Wacker Drive, Suite 2500 |
| 3 | 201 North Central Avenue | Chicago, IL 60606 |
| 3 | Phoenix, AZ 85004 | |
| 4 | | |
| 4 | Kevin Zeidan | Wells Fargo |
| 5 | Vice President | Attn: Legal Department |
| 5 | Comerica Bank – California | Commercial Banking MAC S4101-251 |
| 6 | One Market Plaza | 100 West Washington |
| 6 | Spear Street Tower, Suite 1830 | Phoenix, AZ 85003 |
| 7 | San Francisco, CA 94105 | |
| 8 | Credit Suisse First Boston | Wells Fargo |
| 8 | Attn: Legal Department | Attn: Legal Department |
| 9 | 600 California Street, 20th Floor | 121 Park Plaza |
| 9 | San Francisco, CA 94108 | 3rd Floor |
| 10 | | San Jose, CA 95113 |
| 11 | Internal Revenue Service | Securities and Exchange Commission |
| 11 | Special Procedure Section - Bankruptcy | SEC Headquarters |
| 12 | 55 South Market Street | 100 F Street, NE |
| 12 | HQ6600 | Washington, DC 20549 |
| 13 | San Jose, CA 95113 | |
| 14 | Office of the U.S. Trustee | Securities and Exchange Commission |
| 15 | Nanette Dumas, Esq. | San Francisco District Office |
| 15 | 280 South First Street | 44 Montgomery Street, Suite 2600 |
| 16 | Room 268 | San Francisco, CA 94104 |
| 16 | San Jose, CA 95113 | |
| 17 | | |
| 18 | Securities and Exchange Commission | The Nasdaq Stock Market |
| 18 | Sarah Moyed, Bankruptcy Unit | P.O. Box 7777-W9740 |
| 18 | 5670 Wilshire Boulevard, 11th Floor | Philadelphia, PA 19175-9740 |
| 19 | Los Angeles, CA 90036 | |
| 20 | JDS Capital Management, Inc. | Loomis, Sayles & Company, LP |
| 20 | Joe D. Samberg | Christopher Keller |
| 21 | 100 Park Ave Fl 17 | One Financial Center |
| 21 | New York, NY 10017-5569 | Boston, MA 02111 |
| 22 | | |
| 23 | Monarch Capital | Credit Research & Trading LLC |
| 23 | Matt Waldon | Michael Vaughn |
| 24 | 1250 Monarch Plaza | One Fawcett Place |
| 24 | 3414 Peachtree Road NE | Greenwich, CT 06830 |
| 25 | Atlanta, GA 30326 | |
| 26 | Orbitex Financial Services Group, Inc. | |
| 26 | Neil Feinberg | |
| 27 | 410 Park Avenue | |
| 27 | 18th Floor | |
| 28 | New York, NY 10022 | |

-10-

| | |
|---|---|
| 1 | WM Advisors, Inc.<br>Gary Poker<br>1201 Third Avenue, Floor 22<br>Mail Stop WMP 2220<br>Seattle, WA 98101 | Scott Emmons<br>State Street<br>725 South Figueroa<br>Suite 3100<br>Los Angeles, CA 90017 |

1
WM Advisors, Inc.
Gary Poker
2
1201 Third Avenue, Floor 22
Mail Stop WMP 2220
3
Seattle, WA 98101

Scott Emmons
State Street
725 South Figueroa
Suite 3100
Los Angeles, CA 90017

4
Richard M. Pachulski, Esq.
Pachulski Stang Ziehl Young & Jones
5
10100 Santa Monica Blvd.
Suite 1100
6
Los Angeles, CA 90067

Eleazer Klein, Esq.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

7
Scott Emmons
State Street
8
725 South Figueroa
Suite 3100
9
Los Angeles, CA 90017

Robert J. Brantman, Esq.
Katten Muchin Zavis Rosenman
525 West Monroe Street, Suite 1600
Chicago, IL 60661

10

11
James L. Lopes, Esq.
Steven E. Schon, Esq.
Bernard A. Burk, Esq.
12
Howard Rice Nemerovski Canady Falk & Rabkin
A Professional Corporation
13
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
14

John M. Grenfell, Esq.
Ana N. Damonte, Esq.
Pillsbury Winthrop Shaw Pittman LLP
50 Fremont Street
San Francisco, CA 94105

15
Cecily A. Dumas, Esq.
Friedman Dumas & Springwater LLP
16
150 Spear Street, Suite 1600
San Francisco, CA 94105

Grant T. Stein, Esq.
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

17

18

19

20

21

22

23

24

25

26

27

28

-11-